234 Kan. 1052 (1984)
676 P.2d 764
KANSAS CITY POWER & LIGHT COMPANY, Applicant-Appellant,
v.
THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, Richard C. (Pete) Loux, Chairman; Jane T. Roy and Phillip R. Dick, Commissioners; and their respective successors in Office as the constituent members of the State Corporation Commission of the State of Kansas, Respondents-Appellees.
No. 55,844
Supreme Court of Kansas.
Opinion filed February 18, 1984.
Lowell L. Smithson, of Spencer, Fane, Britt & Browne, of Kansas City, Missouri, argued the cause, and Gardiner B. Davis, of the same firm, Richard M. Smith, of Smith & Winter-Smith, of Mound City, and Warren B. Wood, of Kansas City, Missouri, were with him on the briefs for the appellant.
Robert M. Fillmore, special assistant attorney general and assistant general counsel of the Kansas Corporation Commission, argued the cause, and Brian J. Moline, general counsel, and Eva Powers, assistant general counsel, were with him on the brief for the appellee.
The opinion of the court was delivered by
PRAGER, J.:
This is an appeal by the Kansas City Power and Light Company (KCPL) from orders of the Kansas Corporation Commission (KCC) fixing rates to be charged under contracts designed to promote the development of cogeneration and small power production electrical facilities. The district court upheld the orders of the KCC, and this appeal followed. The issues raised in the case are somewhat technical and require an interpretation of certain federal statutes and regulations and also certain Kansas statutes controlling the operations of the KCC.
In order to better understand the present controversy, it would be helpful at the outset to discuss the subject of cogeneration and its historical background. In 1978, the Congress of the United *1053 States was concerned about the energy crisis and the rapid increases in the cost of electricity. It concluded that a national energy program should be developed to encourage the cogeneration of electricity, which involves the combined production of electrical power and useful thermal energy, such as heat or steam. By producing heat and electricity in one process, fuel consumption can be reduced by as much as one-half. In the field of cogeneration, small power production facilities are those which use biomass, waste, geothermal resources or renewable resources, such as wind, water, or solar energy, to produce electric power. In the course of this opinion, the term "cogenerator" will be used to refer to both cogenerators and small power producers.
In response to the energy crisis, the Congress enacted the Public Utility Regulatory Policies Act of 1978 (PURPA) (Pub. L. No. 95-617). PURPA was enacted, in part, to remove three obstacles to cogeneration:
(1) Utilities were generally unwilling to purchase the power produced by cogenerators or at least to pay an appropriate rate;
(2) discriminatory high rates were sometimes charged for back-up service; and
(3) a cogenerator ran the risk of being considered a public utility and thus subject to state and federal regulations.
Congress designed section 210 of PURPA (16 U.S.C. § 824a-3 [1982]) to remove these barriers to the development of cogeneration. PURPA required that electric utilities purchase electric energy from cogenerators and provide back-up power on a nondiscriminatory basis. Section 210 directed the Federal Energy Regulatory Commission (FERC) to prescribe rules to encourage cogeneration. Section 210 of PURPA further provided that the rates established by FERC for the purchase of electricity (1) shall be just and reasonable to the electric consumers of the electric utility and in the public interest; and (2) shall not discriminate against qualifying cogenerators or qualifying small power producers. It also provided, in substance, that no rule setting rates for purchases of electrical energy from cogeneration facilities "shall provide for a rate which exceeds the incremental cost to the electric utility of alternative electric energy." The term "incremental cost" is defined in the act as the cost to the electric utility of the electric energy which, but for the purchase from the *1054 cogenerator, such utility would generate or purchase from another source. Incremental cost is referred to as "avoided cost." PURPA also provided that each state regulatory authority shall, after notice and a public hearing, implement the rules promulgated by FERC. FERC is given the authority to enforce the requirements of PURPA against any state regulatory authority.
Pursuant to the authority granted by PURPA, FERC adopted rules and regulations pertaining to cogeneration and small power production (18 C.F.R., Part 292 [1983]). These regulations required the rates for the purchase of electricity from federal qualifying cogeneration facilities to be based on "avoided cost," which is defined as the incremental cost which the utility would incur if it supplied the power itself or purchased it from another source. "Avoided cost" was thus established as the maximum rate. Regulation 18 C.F.R. § 292.304 (1983) provided that a rate for cogeneration purchases may be less than the avoided cost, if the state regulatory authority determines that a lower rate is consistent with the regulations and is sufficient to encourage cogeneration and small power production. Section 292.403 authorizes a state regulatory authority, after public notice, to apply to FERC for a waiver from the application of certain regulations. FERC is given the power to grant a waiver, if an applicant demonstrates that compliance with any requirements of the regulations is not necessary to encourage cogeneration and is not otherwise required under Section 210 of PURPA.
In 1979, the Kansas legislature, recognizing the need for energy conservation and cogeneration, responded to PURPA by enacting K.S.A. 66-1,185 which gave the KCC such jurisdiction as is required to provide compliance with and carry out the requirements of PURPA and the rules and regulations adopted by FERC pursuant to the act. It directed the KCC to adopt such rules and regulations deemed necessary for such purpose including those needed for the establishment of necessary fees.
The 1979 Kansas legislature also enacted K.S.A. 66-1,184 which required every electric utility to enter into a contract for parallel generation service with a customer upon request of the customer. Under this statute, if the parties cannot agree on the terms of the contract, the KCC is given jurisdiction to settle any dispute. K.S.A. 66-1,184 has been referred to as the Parallel Generation statute. We, thus, have in Kansas statutes granting to *1055 the KCC authority to implement PURPA and the federal regulations and also to proceed independently under the Kansas Parallel Generation statute.
Following the enactment of PURPA and the adoption of the federal regulations, the constitutionality of PURPA was challenged in a federal district court in Mississippi. It found certain portions of PURPA, including Section 210, to be unconstitutional. That decision was appealed to the United States Supreme Court which reversed, holding that Section 210 of PURPA was within the power of Congress under the Commerce Clause of the United States Constitution. The court further held that Section 210 of PURPA did not trench on state sovereignty in violation of the Tenth Amendment, FERC v. Mississippi, 456 U.S. 742, 72 L.Ed.2d 532, 102 S.Ct. 2126 (1982). The FERC full-avoided-cost and interconnection rules were also attacked in a petition filed in the United States Court of Appeals for the District of Columbia which held both rules to be invalid. On certiorari, the United States Supreme Court reversed, holding that FERC did not act arbitrarily or capriciously in promulgating the full-avoided-cost rule or exceed its authority in promulgating the interconnection rule. American Paper Inst. v. American Elec. Power, 461 U.S. 402, 76 L.Ed.2d 22, 103 S.Ct. 1921 (1983).
American Paper Inst. is important in considering the issues in the present case, because, in the course of the opinion, Justice Marshall discusses the avoided-cost rule and the power of a state regulatory authority to depart from that rule in setting rates in cogeneration contracts. In the opinion, we find the following language:
"It bears emphasizing that the full-avoided-cost rule is not as inflexible as might appear at first glance. First, any state regulatory authority and any nonregulated utility may apply to the Commission for a waiver of the rule. A waiver may be granted if the applicant demonstrates that a full-avoided-cost rate is unnecessary to encourage cogeneration and small power production. 18 CFR 292.403 (1982). Second, a qualifying facility and a utility may negotiate a contract setting a price that is lower than a full-avoided-cost rate. 18 CRF 202.301(b)(1) (1982). Because the full-avoided-cost rule is subject to revision by the Commission as it obtains experience with the effects of the rule, it may often be in the interest of a qualifying facility to negotiate a long-term contract at a lower rate. The Commission's rule simply establishes the rate that applies in the absence of a waiver or a specific contractual agreement." 76 L.Ed.2d at 35. (Emphasis supplied.)
Simply stated, the United States Supreme Court has interpreted *1056 PURPA and the FERC regulations to mean that a state regulatory authority, in implementing PURPA and the federal regulations, must apply the avoided-cost rule in the absence of a waiver granted by FERC or a specific contractual agreement setting a price that is lower than the avoided-cost rate.
On June 21, 1978, the KCC initiated an investigation of electric utilities pricing. On February 6, 1981, the KCC extended the investigation to include cogeneration and small power production. At the commission's direction, numerous public utilities including KCPL and other parties presented testimony at a hearing on this phase of the investigation. On April 28, 1982, the KCC issued its order on cogeneration and small power production as a result of those hearings. At the time the order was entered, the KCC had knowledge of FERC v. Mississippi challenging the constitutionality of PURPA, and American Paper Inst. v. American Elec. Power, which questioned the validity of the FERC regulations. The KCC stated in its order that it had decided to proceed with cogeneration in accordance with the Congressional intent expressed in PURPA, but would primarily rely on state law. The primary concern of the KCC at this hearing was to consider the rate to be paid to cogenerators for their power and the kind of data needed to determine those rates. The KCC, in its written order, recognized that, under FERC rules, the rate to be paid for cogeneration was to be based upon avoided cost. It stated, however, that it was impossible to determine a rate based upon avoided cost and refused to do so. It then proceeded to exercise its power under state law and determined rates on a different basis than avoided cost.
KCPL filed an application for rehearing, contending that the commission lacked jurisdiction to enter its original order and that the original order unconstitutionally deprived KCPL of its constitutional rights and property rights. A rehearing was held, and on November 5, 1982, the KCC issued its order on rehearing which generally affirmed the commission's original order of April 1982, except for matters which are not of concern on this appeal. KCPL then brought this action in the district court of Linn County for a review of the orders of the KCC. On May 12, 1983, the district court entered judgment upholding the KCC orders as within the KCC's jurisdiction, as lawful and not arbitrary *1057 or capricious, and not contrary to the state or federal constitutions. KCPL filed a timely appeal to the appellate courts.
On the appeal, KCPL raises several issues. It contends (1) that the KCC in its order acted beyond its statutory authority; (2) that the KCC orders are unlawful, arbitrary, and capricious; (3) that the KCC violated the KCPL's freedom to contract under the state and federal constitutions; and (4) that the KCC's order results in a taking of KCPL's property without just compensation.
The record shows that, during the course of the proceedings before the KCC, counsel for the utility companies and the staff of the KCC were in agreement that cogenerators should be paid at a rate based upon a utility's avoided cost as provided in the FERC regulations. In the order on rehearing, the KCC noted that its own staff had argued in its brief that Congress has preempted inconsistent state action and, that, even if it had not, the FERC rules were appropriate and that the KCC should refrain from additional regulation on this issue. The KCC then adopted a position that it was not preempted from acting under the state statutes and that it could proceed to determine rates on a basis other than a utility's avoided cost. At the time these orders were made, the KCC did not have the guidance of the United States Supreme Court in American Paper Inst. v. American Elec. Power, which is discussed above and which was not decided until May 16, 1983.
We have considered the record in the case and the briefs of counsel and have concluded that this case should be determined on the basis that the orders of the KCC setting rates for cogeneration not based on a utility's avoided cost were unlawful, since they were in violation of PURPA and the FERC regulations discussed above. We find that federal law has preempted the field in the area of cogeneration, and that the KCC, a state regulatory authority, cannot require KCPL to purchase electricity from cogenerators at a rate greater than the federal regulated rate based on avoided cost. The Congress of the United States established a national policy of developing alternate energy sources to combat the national energy crisis. The federal government has under its supervision activities in the energy field, including cogeneration, designed to benefit the nation as a whole. Where a state regulatory authority acts to the contrary, it must fail. The requirements of PURPA and the FERC regulations preclude or preempt state action not in compliance therewith *1058 unless a waiver is obtained. The FERC regulations (18 C.F.R. § 292.403 [1983]) provide for a federal waiver of the avoided-cost requirement. In this case, no waiver has been obtained from FERC by KCC. Here the KCC admits that the regulations established for cogeneration contracts provide for a rate which exceeds avoided cost. The KCC orders thus conflict and violate the federal statute and regulations, and hence are unlawful.
Since this case was argued on the appeal, counsel for KCPL has provided the court with a copy of Consolidated Ed. Co. v. PSC, 98 App. Div.2d 377, 471 N.Y.S.2d 684 (1983), by the appellate division of the Supreme Court of New York. That case holds, without equivocation, that PURPA and the federal regulations have preempted the area of cogeneration and that New York rules and regulations cannot lawfully require public utilities to purchase electricity from a cogenerator at a rate greater than a rate based upon avoided cost. The New York court relied in part on American Paper Inst. v. American Elec. Power, discussed above.
In view of our determination that the orders of the KCC are unlawful, since they violate the mandatory rate provisions of the federal statute and regulations, we do not deem it necessary to consider the other points raised by KCPL on the appeal. As noted above, in FERC v. Mississippi, PURPA and the FERC regulations issued thereunder were held to be within the power of Congress under the commerce clause and, further, that they do not trench on state sovereignty in violation of the Tenth Amendment. Since we have found that the challenged orders of the KCC are unlawful as a violation of federal law, that determines this case.
The judgment of the district court is reversed and the orders of the KCC are set aside as unlawful for the reasons stated in the opinion.