No. 84–1176. CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK ET AL. Appeal from Ct. App. N. Y. Motion of Edison Electric Institute for leave to file a brief as *amicus curiae* granted. Request of counsel for appellant to delete Brooklyn Union Gas Co. as a party to this proceeding denied. Appeal dismissed for want of substantial federal question.

JUSTICE WHITE, with whom JUSTICE BLACKMUN joins, dissenting.

The Public Utility Regulatory Policies Act of 1978, Pub. L. 95–617, 92 Stat. 3117 (PURPA), is part of a broad congressional

---

response to the energy crisis. One of its provisions, §210 of Title II, 16 U. S. C. §824a–3, is designed to promote the development of alternative energy resources by overcoming the historical reluctance of electric utilities to purchase power from nontraditional facilities. *FERC* v. *Mississippi*, 456 U. S. 742, 750 (1982). Section 210(a) authorizes the Federal Energy Regulatory Commission (FERC) to promulgate "such rules as it determines necessary to encourage cogeneration and small power production," including rules requiring utilities to offer to purchase electricity from qualifying small power production facilities. Section 210(b) requires that the rates for such purchases be "just and reasonable" and nondiscriminatory, and that no FERC rule "shall provide for a rate which exceeds the incremental cost to the electric utility of alternative electric energy."

Pursuant to §210(a), FERC requires utilities to purchase electricity from qualifying facilities. See 18 CFR §292.303(a)(1984). In an apparent effort to encourage decentralized power production as much as possible, FERC adopted the maximum rate allowed by the statute—the incremental, or "full avoided cost," standard—for such purchases. See §292.304(b)(2); see also 45 Fed. Reg. 12214, 12222 (1980). We upheld its choice in *American Paper Institute, Inc.* v. *American Electric Power Service Corp.*, 461 U. S. 402 (1983).

Though PURPA is a federal statute whose administration lies with FERC, "implementation" of the statute is left in large measure to the States. See §210(f), 16 U. S. C. §824a–3(f); 18 CFR §292.401(1984). Thus, a State can, under certain circumstances, set rates that are lower than full avoided costs, 18 CFR §292.304(b)(3)(1984); a qualifying facility and a utility can negotiate for lower rates, §292.301(b)(1); and the state regulatory authority or any nonregulated utility may apply to FERC for a waiver, §292.403. The question in the present case is just how far a State can go in the other direction. In particular, the question is whether a State can require utilities to pay more than the full avoided cost rate for their mandatory purchases.

New York has set a minimum rate of six cents per kilowatt hour for utility purchases from qualifying facilities. N. Y. Pub. Serv. Law §66–c (McKinney Supp. 1984–1985). Appellant challenged the law, arguing that it could not be required to pay six cents per kilowatt hour for the times when its avoided costs fell below that amount. The Appellate Division of the New York Supreme

Court agreed. 98 App. Div. 2d 377, 471 N. Y. S. 2d 684 (1983). It held the six cent per kilowatt hour minimum invalid to the extent it exceeded the federally mandated avoided cost rate. In its view, PURPA, coupled with the Federal Power Act, occupied the field of energy regulation, and FERC had exclusive ratesetting jurisdiction. It also relied on the statute's "just and reasonable" provision, which requires "consideration of potential rate savings to consumers," *American Paper Institute, supra,* at 415, n. 9, and on a statement in the legislative history that incremental cost was to be "an upper limit on the price at which utilities can be required under this section to purchase electric energy," H. R. Conf. Rep. No. 95–1750, p. 98 (1978).

The New York Court of Appeals reversed, 63 N. Y. 2d 424, 472 N. E. 2d 981 (1984), viewing the state and federal laws as complementary rather than conflicting. The court read both the statute and the legislative history to intend a cap only on rates set by FERC, and noted that the New York statute was consistent with the federal Act's overall purpose. It also pointed out that FERC, in explaining its regulations, had said that "the States are free under their own authority, to enact laws or regulations providing for rates which would result in even greater encouragement of these technologies," and that only state rates *below* the federal rate would have to "yield to federal law." 45 Fed. Reg., at 12221.*

In upholding the New York statute, the Court of Appeals reached a conclusion in conflict with the Kansas Supreme Court. See *Kansas City Power & Light Co.* v. *Kansas Corporation Comm'n,* 234 Kan. 1052, 676 P. 2d 764 (1984). Relying on the statement in *American Paper Institute* that the avoided cost rate "applies in the absence of a waiver or a specific contractual agreement," 461 U. S., at 416, the Kansas court held that the state regulatory commission could not set rates for purchases from cogenerators that were higher than avoided cost.

There is no reconciling the decisions of these two state courts of last resort. Both rest on plausible arguments. The question over which they are divided, and which, in the posture of this case, falls

---

*Commentators have relied on these statements to conclude that the States can set higher rates. *E. g.,* Lornell, A PURPA Primer, 3 Solar L. Rep. 31, 53 (1981); Lock, Statewide Purchase Rates Under Section 210 of PURPA, 3 Solar L. Rep. 419, 445–450 (1981).

within our mandatory jurisdiction, is substantial. Moreover, it has arisen in other proceedings, see Lock, Statewide Purchase Rates Under Section 210 of PURPA, 3 Solar L. Rep. 419, 445 (1981), and should be expected to recur. Appellant points to 10 other States besides New York that have authorized or required payments to qualifying facilities in excess of avoided cost. Juris. Statement 12, n. Oregon, for example, has established a rate said to be "well in excess of avoided costs" on the theory that the statutory ceiling applies only to FERC. Hagler, Utility Purchases of Decentralized Power: The PURPA Scheme, 5 Stan. Envtl. L. Ann. 154, 163 (1983). Overall, the States have taken a variety of approaches to ratesetting under PURPA. See generally Lock & Van Kuiken, Cogeneration and Small Power Production: State Implementation of Section 210 of PURPA, 3 Solar L. Rep. 659 (1981). The effective, orderly, and consistent administration of PURPA requires that the extent of their authority to do so be settled.

The federal question here is thus "substantial" in two senses—it is both open to debate and important. I dissent from the Court's conclusion to the contrary.