**MACOM PRODUCTS CORPORATION, Plaintiff,**

v.

**AMERICAN TELEPHONE & TELEGRAPH COMPANY et al., Defendants.**

**Civ. No. 72-2722-HP.**

United States District Court,
C. D. California.

June 5, 1973.

Nossaman, Waters, Scott, Krueger & Riordan, by Richard R. Mainland, Richard D. Fybel, Frederic A. Fudacz, Los Angeles, Cal., for plaintiff.

Wyman, Bautzer, Rothman & Kuchel, by Frank Rothman, Mariana R. Pfaelzer, Beverly Hills, Cal., and Pillsbury, Madison & Sutro by William E. Mussman, Timothy E. Carr, San Francisco, Cal., for American Telephone & Telegraph Co. & Pacific Telephone & Telegraph Co.

Lawler, Felix & Hall by Anthonie M. Voogd, Los Angeles, Cal., for Bell Systems.

O'Melveny & Myers by Charles W. Bender, Stanley H. Williams, Los Angeles, Cal., for General Telephone Co.

## MEMORANDUM AND ORDER DENYING MOTION TO DISMISS, AND INVOKING PRIMARY JURISDICTION

PREGERSON, District Judge.

Plaintiff manufactures and markets an automatic telephone dialing device known as the "Name Caller." The device, which can be wired directly to the telephone, enables its user to dial automatically any one of thirty-eight preselected telephone numbers. The device functions in much the same manner as the manual dialer in the ordinary telephone, that is, by interrupting the circuit in the telephone line. This dialing function is referred to as "network control signalling," and is performed by "network control signalling units"—like the Name Caller.

Defendants in this antitrust action are American Telephone and Telegraph Company, General Telephone and Electronics Corporation, and forty-one of their associated operating companies.

Defendants also market an automatic dialing device which competes with plaintiff's Name Caller.

Pursuant to the Communication Act of 1934, 47 U.S.C. § 151 et seq., defendants filed with the Federal Communications Commission [FCC] Tariff FCC No. 263 which requires that all network control signalling be performed by equipment installed and maintained by the telephone company. The tariff prohibits direct electrical connection of customer-provided devices to the telephone network. It requires that such devices be connected by the telephone company by means of a protective interface for which the customer pays an installation and monthly service charge. A similar tariff has been filed with regulatory commissions in forty-four states and in the District of Columbia.

Plaintiff's basic contention is that Tariff FCC No. 263 was filed in an effort to eliminate competition in the marketing of automatic dialing devices. The complaint seeks treble damages alleging that the enforcement of the tariff violates Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

The matter came before the court on April 23, 1973 for hearing of defendants' motion to dismiss for failure to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(6). Defendants' motion sets forth three alternative grounds which, they argue, compel dismissal: (1) the Communications Act of 1934 precludes maintenance of this action under the antitrust laws, (2) under the doctrine of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Sherman Act does not apply to conduct of communications common carriers taken pursuant to state action, and (3) the doctrine of primary jurisdiction requires the court to defer to the FCC.

The court has read the voluminous briefs, studied the pertinent authorities, examined the affidavits and exhibits, and heard the argument of counsel; in addition, the court has considered the supplemental briefs filed after the hearing.

The court now holds that the Communications Act of 1934 does not immunize defendants from antitrust regulation and that there is insufficient state

action to create immunity under Parker v. Brown, *supra*. However, the court concludes that primary jurisdiction lies with the FCC.

## I.

 Defendants contend that by reason of the pervasive regulatory scheme established by the Communications Act they are excluded from antitrust regulation with respect to the anticompetitive conduct alleged in the complaint.

They urge this court to apply the Supreme Court's holdings in United States v. Pan American World Airways, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963), and Hughes Tool Co. v. Trans World Airlines, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973), to the facts of this case. Those cases hold that the Federal Aviation Act, 49 U.S.C. § 1301 et seq., immunized particular transactions, therein described, from the antitrust laws. In those cases, however, "[c]ompetition and monopoly—two ingredients of the antitrust laws—[w]ere . . . standards governing the CAB's exercise of authority. . . ." Hughes Tool Co. v. T.W.A., *supra* at 385, 93 S.Ct. at 659–660 (footnotes omitted). But under the Communications Act, as under the Commodity Exchange Act, "the area of administrative authority does not appear to be particularly focused on competitive considerations; there is no express provision in the Act directing administrative officials to consider the policy of the antitrust laws in carrying out their duties and there is no other indication that Congress intended the adjudicative authority given the Commission . . . to be a complete substitute for judicial enforcement of the antitrust laws." [1] Ricci v. Chicago Mercantile Exchange, 409 U.S. 289, 303 n. 13,

93 S.Ct. 573, 581 n. 13, 34 L.Ed.2d 525 (1973).

Therefore, the court holds that Congress did not intend to grant antitrust immunity to defendants with respect to their alleged anticompetitive conduct. In reaching this conclusion, the court is guided by the principle that "[r]epeals of the antitrust laws by implication from a regulatory statute are strongly disfavored, and have only been found in cases of plain repugnancy between the antitrust and regulatory provisions." United States v. Philadelphia National Bank, 374 U.S. 321, 350–351, 83 S.Ct. 1715, 1734–1735, 10 L.Ed.2d 915 (1963) (footnotes omitted). It does not appear thaat the maintainance of this antitrust action is repugnant to the FCC's regulatory authority. See Carter v. A. T. & T., 365 F.2d 486 (5th Cir. 1966). The Communications Act does not preclude maintainance of this antitrust action.

## II.

 Since the Sherman Act does not apply to state activities nor to conduct of private persons taken under compulsion of state law, Parker v. Brown, *supra*, defendants contend that they are exempt from antitrust regulation, because they are obliged by state law to file and enforce the challenged tariff.

 In Parker v. Brown, *supra*, the Supreme Court held a program instituted under the California Agricultural Prorate Act immune from antitrust attack, and enunciated the doctrine that the Sherman Act applies to individuals and corporations, not to states. Subsequent decisions have required more than general state supervision to invoke *Parker* immunity. Whitten v. Paddock Pool Builders, 424 F.2d 25 (1st Cir. 1970), cert. denied 400 U.S. 850, 91 S.Ct. 54, 27 L.Ed.

---

1. Antitrust considerations may be relevant to the FCC's determination of the legality of a tariff under the Communications Act; but they are not determinative.

See Otter Tail Power Co. v. U. S., 410 U.S. 366, 375, 93 S.Ct. 1022, 1028, 35 L.Ed.2d 359 (1973).

2d 88; Travelers Insurance Co. v. Blue Cross of Western Pennsylvania, 298 F. Supp. 1109 (W.D.Pa.1969); Marnell v. United Parcel Service, 260 F.Supp. 391 (N.D.Cal.1966). As the Fifth Circuit has noted, "the *Parker* exclusion applies to the rates and practices of public utilities enjoying monopoly status under state policy when their rates and practices are subjected to meaningful regulation and supervision by the state to the end that they are *the result of the considered judgment of the state regulatory authority*. . . ." Gas Light Co. of Columbus v. Georgia Power Co., 440 F. 2d 1135, 1140 (5th Cir. 1971) (emphasis added).

■ While defendants are required to file and enforce tariffs, the contents of the tariff are not prescribed by the state; the tariff need only be "reasonable." In most states where the telephone companies filed a tariff similar to Tariff FCC No. 263, there has been no regulatory commission action whatsoever on the tariff. This is because, typically, tariffs concerning telephone company practices or rules become effective 30 days after filing, and prior approval by the regulatory agency is not required. In some states the tariff has been approved by the regulatory agency, but no adversary hearings were held. Finally, in a few states, adversary hearings were held, however, in those states it does not appear that it was the "considered judgment of the state regulatory authority" that the telephone company could prohibit interconnection of peripheral devices which cause no harm to the telephone system. In short, the challenged tariff is not the "result of the considered judgment of [any] state regulatory authority."

The court therefore holds that there is insufficient state action here to invoke immunity under Parker v. Brown, *supra*.

### III.

■ The doctrine of primary jurisdiction is the best answer to the recurring problem which confronts a court when conduct within the reach of the antitrust laws is also covered by some regulatory enactment. It is essential, not only as a matter of comity, but also to effectuate the regulatory scheme, that the court make a proper accommodation between the antitrust and regulatory regimes. It is well established that where the regulatory scheme is administered by an agency, the antitrust court will stay its hand to permit institution of administrative proceedings if they are likely to make significant contributions to the resolution of the lawsuit. Ricci v. Chicago Mercantile Exchange, *supra*; Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966); Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

■ The court concludes that this matter should be referred to the FCC for appropriate administrative proceedings. The Communications Act provides that "[a]ll charges, practices, classifications and regulations" of telephone companies "shall be just and reasonable", and all "unjust or unreasonable" practices are declared to be unlawful. 47 U.S.C. § 201(b). Thus the complaint in this matter which claims that Tariff FCC No. 263 is illegal under the Communications Act raises issues within the jurisdiction of the FCC. The Communications Act also provides a procedure for raising these issues before the FCC. 47 U.S.C. § 208. Further, the FCC possesses the expertise in the field of wire communications *to decide the technical issues raised by the complaint.[2]*

Determination by the FCC, (1) whether the Name Caller poses a threat of

2. Moreover, an FCC-established Joint Federal-State Board has been studying the technical and economic aspects of inter-

connecting customer-provided equipment with the national telephone system.

harm to the telephone system, and (2) whether Tariff FCC No. 263 is lawful as applied to the Name Caller, will materially aid the court in the resolution of this lawsuit.

The benefits to be derived from the agency's determination of these questions outweigh the costs and delay that may result from a reference to the FCC. To minimize any such hardship, however, the court will retain jurisdiction over this matter, and will request the FCC to act within a stated time period.

Accordingly,

It is ordered:

1. Defendants' motion to dismiss the complaint in this action is denied.

2. This matter is referred to the Federal Communications Commission for a full and adequate determination of the questions raised herein, including, but not limited to:

(a) Whether the Name Caller is potentially harmful to the telephone network; and

(b) Whether Tariff FCC No. 263 is "unjust and unreasonable" and thus violative of the Communications Act of 1934.

3. Plaintiff shall initiate the Commission's inquiry by filing an appropriate complaint with the Commission.

4. The court requests the Commission to conclude its proceedings and submit its decision to this court not later than seven months after plaintiff files its complaint.

5. The parties may conduct appropriate discovery in this action during the period that this matter is before the FCC.

6. The Clerk of the Court shall serve copies of this Memorandum and Order by United States mail on the attorneys of record for the parties appearing herein, and on the Federal Communications Commission.