GTE SPRINT COMMUNICATIONS CORPORATION, and MCI Telecommunications Corporation

v.

John T. DOWNEY, individually and in his capacity as Chairman of the Department of Public Utility Control of the State of Connecticut; Peter G. Boucher, Marvin S. Loewith, Edythe J. Gaines, and David J. Harrigan, each individually and in his or her capacity as a Commissioner of the Department of Public Utility and Control of the State of Connecticut; Joseph Lieberman, individually and in his capacity as Attorney General of the State of Connecticut; Southern New England Telephone Company; and New York Telephone Company.

Civ. No. H–85–974(AHN).

United States District Court,
D. Connecticut.

Feb. 24, 1986.

Charles L. Howard, Thomas M. Bounty, Shipman & Goodwin, Hartford, Conn., Robert L. Sills, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, Brad W. Mutchelkanus, Phyllis A. Whitten, GTE Sprint Communications Corp., Washington, D.C., for GTE Sprint Communications Corp.

Robert Golden, Jr., Phyllis E. Lemell, Asst. Attys. Gen., New Britain, Conn., for Downey, Boucher, Loewith, Gaines, Harrigan & Lieberman.

Robert K. Cuilla, Tyler, Cooper & Alcorn, James B. Curtin, Gen. Counsel, New Haven, Conn., for Southern New England Telephone.

Timothy S. Fisher, Robinson & Cole, Hartford, Conn., Henry D. Levine, Morrison & Foerster, Washington, D.C., for MCI Telecommunications Corp.

John E. Reilly, New York Telephone Co., New York City, Marjorie J. Berger, Updike, Kelly & Spellacy, P.C., Hartford, Conn., for New York Telephone.

## RULING AND ORDER

NEVAS, District Judge.

This action for injunctive and declaratory relief concerns a recently enacted Connecticut public act entitled "An Act Preserving

Universal Telephone Service in Connecticut" ("Act"), and a decision by the State of Connecticut Department of Public Utility Control (the "DPUC") implementing the Act.[1] GTE Sprint Communications Corporation ("Sprint") filed suit on November 15, 1985. Shortly thereafter, MCI Telecommunications Corporation ("MCI") intervened as a plaintiff. The plaintiffs seek to enjoin the DPUC Commissioners and the Attorney General from enforcing the Act and the DPUC decision against them and seek a declaration that the Act and the DPUC decision are unenforceable.

The Act is a comprehensive scheme engineered to regulate intrastate telecommunications. The Act prohibits "intrastate interexchange telecommunications service" in Connecticut by carriers not authorized by the State to provide such service on or before January 1, 1984. (Section 3(a) of the Act). The controversial section 3 of the Act requires, among other things, interstate communication carriers ("ICCs") like Sprint and MCI, operating in Connecticut but unauthorized to provide intrastate service, to (1) inform their customers through "billing notices, advertising campaigns, customer contacts and other similar methods" that they are authorized only to provide interstate services (section 3(b) of the Act); (2) compensate the appropriate local exchange companies, like the defendant Southern New England Telephone Company ("SNETCo"), as directed by the DPUC for any intrastate calls using ICC facilities (section 3(c) of the Act); and (3) "track" all intrastate calls using their ICC facilities if the DPUC so orders (section 3(c) of the Act).

The principal thrust of the plaintiffs' complaints is that section 3 of the Act and the DPUC decision implementing that section intrude into an area of telecommunications preempted by the Communications Act of 1934, 47 U.S.C. Sections 1 *et seq.* (1982),[2] and exclusively regulated by the Federal Communications Commission ("FCC") in contravention of the supremacy clause of the United States Constitution. U.S. Const. art. VI, cl. 2. The Act is also alleged to unduly burden and interfere with interstate commerce in violation of the commerce clause of the Constitution. U.S. Const. art. I, Section 8, cl. 3. Since this action arises under the laws and Constitution of the United States, the court has jurisdiction to hear and decide Sprint and MCI's complaints.

On November 20, 1985, the court heard the parties on Sprint's application for a temporary restraining order. The parties filed a Stipulation (filing no. 17) on November 22, 1985, in which the plaintiffs agreed to comply with certain orders in the DPUC decision, the DPUC and State Attorney General agreed not to enforce the Act or DPUC decision against the plaintiffs, and the pending application for a temporary restraining order was withdrawn. The court set December 9, 1985, as a date for a preliminary injunction hearing. The parties then entered into a second Stipulation (filing no. 30) in which the terms of the earlier stipulation were incorporated, the plaintiffs agreed to maintain records that would permit compensation of local exchange companies according to the Act if required, and the motions for a preliminary injunction were withdrawn. As agreed, the stipulation is to remain in effect until this court enters a final judgment.

---

1. The Connecticut Public Act 85–187 became effective on its passage on May 23, 1985. (Exhibit A to Sprint complaint). The DPUC held hearings on section 3 of the Act in July, 1985. On August 21, 1985, the DPUC issued its decision which included orders implementing the Act. (Decision docket no. 85–05–23, exhibit B to Sprint complaint). The DPUC modified portions of its earlier decision on September 10, 1985. (Entitled Errata, exhibit C to Sprint complaint).

2. In 1934, Congress created the FCC "to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges...." 47 U.S.C. Section 151. Congress charged the FCC with exclusive federal jurisdiction to uniformly regulate interstate transmissions or communications. 47 U.S.C. Section 152(a).

The essence of this controversy concerns the FCC's comprehensive regulatory responsibilities in the constantly changing complex telecommunications industry. The plaintiffs do not question that Connecticut may refuse to certify ICCs like Sprint and MCI as intrastate carriers. However, Sprint and MCI do question the State's authority to regulate their conduct where Sprint or MCI's Connecticut customers place unpreventable intrastate calls using Sprint or MCI interstate facilities. The court and all the litigants agree that the resolution of the principal legal issue of preemption in this case requires extensive findings of complicated and controverted technical facts. For example, as MCI argues, if MCI's intrastate traffic in Connecticut is determined to be "incidental"[3] to MCI's interstate operations, then that traffic would be subject to the FCC's exclusive jurisdiction pursuant to the Communications Act of 1934, 47 U.S.C. Sections 152(a), 153(a). (MCI's Memorandum in Opposition to Defendants' Motion to Dismiss at 4). An additional concern is whether the State's attempted regulation of Sprint and MCI's telecommunication services interferes with the FCC's statutory duties to uniformly regulate the interstate telecommunications industry.

The parties recently raised the appropriateness of referring this matter to the FCC under the doctrine of primary jurisdiction. *See, e.g., Macom Products Corp. v. American Telephone & Telegraph Co.,* 359 F.Supp. 973, 978 (C.D.Cal.1973). Where the court and an administrative agency have concurrent jurisdiction, as in this case, a referral to an agency may be wise. The primary jurisdiction doctrine is a flexible device created by the judiciary to promote the "proper relationship between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 164, 1 L.Ed.2d 126 (1956). *See generally* 5 B. Mezines, J. Stein & J. Gruff, *Administrative Law,* Sections 47.01 to 47.03 at 47-1 to 47-54 (1979 & Supp.1985). The Second Circuit advises that a court's discretion invoking this doctrine should be guided "by a desire for uniformity of regulation and the need for initial consideration by a body possessing special expertise in the issue presented." *Board of Education of City School District of City of New York v. Harris,* 622 F.2d 599, 606 (2d Cir.1979) (citations omitted), *cert. denied sub nom. Hufstedler v. Board of Education of City School District of City of New York,* 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981). When primary jurisdiction is invoked, a court's jurisdiction "is not ousted but merely postponed." *State v. Department of Health, Education and Welfare,* 480 F.Supp. 929, 937 (E.D.N.C.1979). A court will "stay its hand until the agency has applied its expertise to the salient questions." *Engelhardt v. Consolidated Rail Corp.,* 756 F.2d 1368, 1369 (2d Cir.1985), *quoting Hansen v. Norfolk & Western Ry. Co.,* 689 F.2d 707, 710 (7th Cir.1982). Further, a challenge in a district court on constitutional and statutory grounds is "immaterial" to a referral to the FCC. *City of Peoria v. General Electric Cablevision Corp.,* 690 F.2d 116, 121 (7th Cir.1982).

**3.** The FCC retains exclusive jurisdiction over interstate communication by wire or interstate transmission of energy by radio. 47 U.S.C. Section 152(a). *New York Telephone Co. v. FCC,* 631 F.2d 1059, 1064-66 (2d Cir.1980). The FCC has no jurisdiction with respect to "charges, classifications, practices, services, facilities, or regulations for or in connection with *intrastate* communication service by wire or radio of any carrier, ...." 47 U.S.C. Sections 152(b)(emphasis added).

Section 153(e), in relevant part, defines "[i]nterstate communication" or "interstate transmission" as "communication or transmission ... from any State, ... to any other State, ...." The telephone service at issue here is "[w]ire communication" or "communication by wire" which is defined as:

[T]he transmission of writing, signs, signals, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) *incidental to such transmission.*

47 U.S.C. Sections 153(a)(emphasis added).

In view of the appropriateness in referring to the FCC a matter requiring a resolution consistent with the FCC's regulatory responsibilities and concededly "beyond the conventional experience of judges," *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952), the court requested the parties' written positions on referral. On February 21, 1986, the court and counsel met and discussed the method and scope of referral to the FCC, the necessity for surety, and the stay or dismissal of this action pending the receipt of the FCC's view.

Accordingly, the following is ordered.

1. The plaintiffs are to file a petition for declaratory ruling with the FCC on or before March 27, 1986.

2. The petition is to include a question inquiring whether, under the facts of this action as determined by the FCC, sections 3(b) and 3(c) of the Act and any DPUC decisions implementing those sections of the Act regulate interstate communications within the FCC's jurisdiction pursuant to the Communications Act of 1934 or pursuant to the rules, regulations, or decisions of the FCC adopted according to its authority.

3. The Stipulation filed December 19, 1985, shall remain in effect except that each plaintiff is ordered to post security with the clerk of this court on or before June 1, 1986, in the form of a renewable surety bond or letter of credit for the compensation payments to the defendant SNETCo envisioned by the Act and ordered by the DPUC. Sprint's security is to be in the amount of $500,000. MCI's security is to be in the amount of $1,000,000.

Rules 65(c) and 65.1, Fed.R.Civ.P., will apply to the posting of this security, including the eventual assessment as taxable costs against SNETCo for Sprint and MCI's expenses incurred in posting the security should the plaintiffs prevail in this action.

4. This order does not preclude any party from moving this court for relief from the stipulated stay during the pendency of this action.

5. Discovery and all pending motions are stayed until the FCC rules on the ordered petition.