CONNECTICUT LIGHT AND POWER COMPANY *v.* DEPARTMENT OF PUBLIC UTILITY CONTROL ET AL.
(13480)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued December 7, 1988—decision released March 14, 1989

*Allan B. Taylor,* with whom was *Philip M. Small,* senior counsel, for the appellant (plaintiff).

*Phyllis E. Lemell,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* former attorney general, for the appellee (named defendant).

*Bill Kowalski,* with whom, on the brief, was *James F. Meehan,* for the appellee (defendant division of consumer counsel).

*Robert E. Wright,* with whom, on the brief, was *Lawrence J. Golden,* for the appellee (defendant Southeastern Connecticut Regional Resources Recovery Authority).

*Peter A. Gutermann,* with whom, on the brief, was *George C. Hastings,* for the appellees (intervening defendant town of East Lyme et al.).

*Kathleen Eldergill,* for the appellee (intervening defendant town of Preston).

COVELLO, J. This is an appeal from a declaratory ruling of the department of public utility control (DPUC).

It comes to us by way of reservation from the Superior Court. The dispositive issue is whether DPUC correctly concluded that General Statutes § 16-243e required the plaintiff, Connecticut Light and Power Company (CL&P), to purchase all of the electrical output of the defendant Southeastern Connecticut Regional Resources Recovery Authority (SCRRRA) at the so-called "municipal rate." We conclude that General Statutes § 16-243e does not require this and therefore order a remand for further proceedings.

Examination of the record discloses that on June 8, 1987, SCRRRA filed a petition with DPUC pursuant to General Statutes §§ 4-176,[1] 16-243a (c),[2] and 16-243e.[3] The petition sought a declaratory ruling

---

[1] General Statutes (Rev. to 1987) § 4-176 provides: "DECLARATORY RULINGS. Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 unless the agency conducted a hearing pursuant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such ruling, in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

This section was subsequently revised by Public Acts 1988, No. 88-317.

[2] General Statutes § 16-243a (c) provides in relevant part: "The department of public utility control, with respect to electric public service companies . . . shall establish rates and conditions of service for: (1) The purchase of electrical energy and capacity made available by a private power producer . . . . The rates for electricity purchased from a private power producer shall be based on the full avoided costs of the electric public service company . . . regardless of whether the purchaser is simultaneously making sales to the private power producer."

[3] General Statutes § 16-243e provides: "Any electric company, as defined in section 16-1, purchasing electricity generated by a resources recovery facility, as defined in section 22a-260, owned by or operated by or for the benefit of a municipality or municipalities, shall enter into a contract with the owner of such facility requiring the electric company to purchase such

determining the amounts and the prices that CL&P would be required to pay for the electrical output generated by the SCRRRA municipal solid waste disposal facility.

In accordance with General Statutes § 16-2 (c),[4] the matter was assigned to a panel of three of DPUC's five commissioners for a hearing and decision. Pursuant to General Statutes § 16-8 (a),[5] a member of DPUC's staff, who was also a member of the Connecticut bar, was designated as a hearing examiner to conduct the hearing, ascertain the facts, and make a report thereon to the commissioners. Following six public hearings on the matter, the three commissioners issued their unanimous ruling on October 9, 1987. The gravamen of their decision was that General Statutes § 16-243e mandated that (1) the plaintiff CL&P was to purchase all of SCRRRA's electrical output, and (2) CL&P was to pay SCRRRA for the electricity at the "municipal rate."

On November 5, 1987, CL&P filed an administrative appeal in the Superior Court pursuant to General Stat-

---

electricity, for a period beginning on the date that the facility begins generating electricity and having a duration of not less than twenty years, at the same rate that the electric company charges the municipality or municipalities for electricity."

[4] General Statutes § 16-2 (c) provides: "Any matter coming before the authority may be assigned by the chairperson to a panel of three commissioners, not more than two of whom shall be members of the same political party. Except as otherwise provided by statute or regulation, the panel shall determine whether a public hearing shall be held on the matter, and may designate one or two of its members to conduct such hearing or appoint an examiner to ascertain the facts and report thereon to the panel. The decision of the panel, if unanimous, shall be the decision of the authority. If the decision of the panel is not unanimous, the matter shall be referred to the entire authority for decision."

[5] General Statutes § 16-8 (a) provides in relevant part: "The department may designate in specific cases a hearing examiner who may be a member of its technical staff or a member of the Connecticut Bar engaged for that purpose . . . to hold a hearing and make report thereon to the department."

utes §§ 16-35[6] and 4-183 (a),[7] naming as defendants, DPUC, consumer counsel and SCRRRA. Thereafter, on December 14, 1987, the trial court, *Shaughnessy, J.,* granted motions to intervene filed by the defendant towns of Groton, Guilford, East Lyme, Griswold, Ledyard, New London, North Stonington, Stonington and Preston. On April 11, 1988, pursuant to their stipulation and at the request of all the parties, the court, *Allen, J.,* reserved the matter for the consideration and advice of the Appellate Court in accordance with Practice Book §§ 4147[8] and 4148.[9] On August 4, 1988, we transferred the matter to ourselves pursuant to Practice Book § 4023.

The defendant SCRRRA is a municipal resource recovery authority established by the joint resolution of its eleven member towns,[10] in accordance with the provisions of General Statutes § 7-273aa.[11] SCRRRA proposes to build in the town of Preston a $72,000,000

---

[6] General Statutes § 16-35 provides in relevant part: "Any company, town, city, borough, corporation or person aggrieved by any order, authorization or decision of the department of public utility control . . . may appeal therefrom in accordance with the provisions of section 4-183."

[7] General Statutes (Rev. to 1987) § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision . . . is entitled to judicial review by way of appeal under this chapter . . . ."

[8] Practice Book § 4147 provides in relevant part: "A reservation shall be taken to the supreme court or to the appellate court from those cases in which an appeal could have been taken directly to the supreme court, or to the appellate court, respectively, had judgment been rendered."

[9] Practice Book § 4148 provides in relevant part: "Before any question shall be reserved by any court, counsel shall file in that court a stipulation which shall clearly and fully state the question or questions upon which advice is desired."

[10] The member towns are East Lyme, Griswold, Groton, Ledyard, Montville, New London, North Stonington, Norwich, Sprague, Stonington and Waterford.

[11] General Statutes § 7-273aa (b) provides in relevant part: "Any . . . two or more municipalities may, by concurrent ordinances of their legislative bodies, adopt the provisions of this chapter and . . . create a new . . . regional resource recovery authority."

private power production facility[12] that is designed to dispose of municipal solid waste. The waste will be burned through the use of a mass-burning grate system and boiler combination to produce steam that will in turn energize turbines and thereby generate electricity. The Preston facility will not only serve the salutary function of producing electricity, but will also provide the member towns with a means of disposing of their solid waste at a time when their available landfill space is dwindling rapidly.

The plaintiff CL&P is a public service company that sells gas and electricity to its various customers throughout Connecticut. It either purchases the electricity at a wholesale price or generates the electricity at a cost that is generally lower than the price for which it sells it to others. In regulatory parlance, this is called the "avoided cost" of the electricity. See General Statutes § 16-243a (a).[13] This must be contrasted with the higher "municipal rate" which is the amount that CL&P charges it municipal customers. See General Statutes § 16-243e, footnote 3, supra.

CL&P's customers include residents in eight of the eleven communities belonging to SCRRRA. Its service area, however, does not include the town of Norwich, the Jewett City borough of Griswold or the entire city

[12] General Statutes § 16-243b (a) (1) provides: " 'Private power production facility' means a facility which generates electricity in the state (A) solely through the use of cogeneration technology, provided the average useful thermal energy output of the facility is at least twenty per cent of the total energy output of the facility, (B) solely through the use of renewable energy sources or (C) through both only."

[13] General Statutes § 16-243a (a) provides: "As used in this section, 'avoided costs' means the incremental costs to an electric public service company, municipal electric energy cooperative organized under chapter 101a or municipal electric utility organized under chapter 101, of electric energy or capacity or both which, but for the purchase from a private power producer, as defined in section 16-243b, such company, cooperative or utility would generate itself or purchase from another source."

of Groton and a portion of the town of Groton. Approximately 30 percent of the total tonnage to be consumed at the SCRRRA solid waste facility will come from these three communities whose residents are not CL&P customers.

As owner of the proposed private power production facility, SCRRRA will be a private power producer within the meaning of General Statutes § 16-243b (a) (3).[14] CL&P, as a public service company, is required under the provisions of § 16-243a (b) to "[p]urchase any electrical energy and capacity made available, directly by a private power producer [SCRRRA]." The rate to be paid for the electricity generated by the private power producer is to be "based on the full avoided costs of the electric public service company . . . ." General Statutes § 16-243a (c) (2).

SCRRRA's facility, however, in addition to being a private power production facility will also be a resources recovery facility within the meaning of General Statutes § 22a-260 (11).[15] This being the case, a public service company such as CL&P is required to purchase the electrical output of such a facility "at the same rate that the electric company charges the municipality or municipalities for electricity." General Statutes § 16-243e.[16] Thus, by paying the higher "municipal

[14] General Statutes § 16-243b (a) (3) provides in relevant part: " 'Private power producer' means . . . (C) . . . a political subdivision of the state or any other person, firm or corporation . . . which generates electricity solely through ownership of one hundred per cent or less of a private power production facility . . . ."

[15] General Statutes § 22a-260 (11) provides: " 'Resources recovery facility' means a facility utilizing processes aimed at reclaiming the material or energy values from solid wastes."

[16] General Statutes § 16-243e provides: "Any electric company, as defined in section 16-1, purchasing electricity generated by a resources recovery facility, as defined in section 22a-260, owned by or operated by or for the benefit of a municipality or municipalities, shall enter into a contract with the owner of such facility requiring the electric company to purchase such electricity, for a period beginning on the date that the facility begins gener-

rate," the stockholders and customers of public service companies subsidize the resources recovery facility by purchasing its electrical output at a price higher than the public service company could purchase it or generate it elsewhere.

The DPUC ruling concluded that § 16-243e required CL&P to purchase all of SCRRRA's electrical output for twenty-five years and to pay for the same at the "municipal rate" for the first twenty years of the contract. Over the term of the contract, the resulting CL&P subsidy is estimated to be $105,000,000.

CL&P appealed this ruling contending that § 16-243e as construed by DPUC: (1) preempts the letter and purposes of the federal Public Utility Regulatory Policies Act of 1978 in violation of the supremacy clause of the United States constitution; (2) violates the commerce clause of the United States constitution; (3) unconstitutionally takes CL&P's property for public use without just compensation; and (4) unconstitutionally deprives CL&P of the equal protection of the laws. CL&P further argues that DPUC misconstrued § 16-243e in entering its order. We agree with CL&P that the statute was misapplied to the factual circumstances evident here and do not, therefore, reach the constitutional issues raised. We, therefore, remand the matter for further proceedings.

CL&P argued to DPUC that only 70 percent of the municipal solid waste that would fuel the resources recovery facility came from municipalities served by CL&P. CL&P argued that it should therefore have to pay for only 70 percent of the electrical output at the higher municipal rate required by § 16-243e and that it should be able to purchase the remaining 30 percent

---

ating electricity and having a duration of not less than twenty years, at the same rate that the electric company charges the municipality or municipalities for electricity."

of the output at the avoided cost rate prescribed by § 16-243a. DPUC rejected this argument stating in its declaratory ruling that "[t]he statute [§ 16-243e] states simply that an electric company 'purchasing electricity' shall enter into contracts at the statutory rate. It makes no mention, by way of limitation on this obligation, in regard to where the waste for the electricity originates from." We disagree.

Generally, this court accords "considerable deference to the construction given a statute by the administrative agency charged with its enforcement." *Sutton* v. *Lopes,* 201 Conn. 115, 120, 513 A.2d 139, cert. denied sub nom. *McCarthy* v. *Lopes,* 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986). However, "the construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference." *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987).

General Statutes § 16-243e establishes a special rate to be paid by electric companies for the purchase of "electricity generated by a resources recovery facility . . . owned by or operated by or for the benefit of a municipality . . . ." This rate is "the same rate that the electric company charges the municipality or municipalities for electricity." General Statutes § 16-243e. The special rate to be paid by the electric company under § 16-243e, therefore, is the same rate that it charges the municipality for electricity. We emphasize that these rates are to be equivalent. If the electric company is not charging the municipality anything for its electricity, it follows that the municipality may not charge the electric company under § 16-243e for the electricity it may produce. Since CL&P was charging Groton, Norwich and Jewett City nothing for electricity, CL&P is not required to pay SCRRRA at the munic-

ipal rate prescribed in § 16-243e for the 30 percent of its electrical output that is forecast to be generated by the municipal solid waste contributed by those three communities.

This, of course, is not to say that CL&P has no obligation to purchase the electricity. General Statutes § 16-243a (b) provides in relevant part: "Each electric public service company . . . shall: (1) Purchase any electrical energy and capacity made available . . . by a private power producer . . . ." General Statutes § 16-243a (c) (2) provides in relevant part: "The rates for electricity purchased from a private power producer shall be based on the full avoided costs of the electric public service company . . . regardless of whether the purchaser [electric public service company] is simultaneously making sales to the private power producer." Here there is no statutory linkage between the rate paid and the rate charged, simply a clear mandate to purchase all of the electricity at the avoided costs of the electric public service company.[17]

To the reserved question "Does the Decision of the Department of Public Utility Control, dated October 6, 1987, in Docket No. 87-06-12 ('Decision') err in interpreting and applying Section 16-243e of the General Statutes by requiring plaintiff The Connecticut Light and Power Company ('CL&P') to purchase all of the electricity generated by defendant Southeastern Connecticut Regional Resources Recovery Authority ('SCRRRA')?" the answer is "Yes." There is error and the matter is remanded to DPUC for a recalculation of the rates to be paid by CL&P to SCRRRA through

---

[17] Because CL&P has agreed to pay for 70 percent of the electrical output at the higher municipal rate, we need not address the preemption issues that CL&P raises on appeal. "Constitutional issues are not considered unless absolutely necessary to the decision of a case . . . ." *State* v. *DellaCamera,* 166 Conn. 557, 560–61, 353 A.2d 750 (1974).

application of both General Statutes § 16-243a and General Statutes § 16-243e.

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.