The **CONNECTICUT LIGHT & POWER COMPANY**

v.

**SOUTH EASTERN CONNECTICUT REGIONAL RESOURCES RECOVERY AUTHORITY, et al.**

Civ. No. 2:90CV00057(AHN).

United States District Court, D. Connecticut.

May 27, 1993.

Mark F. Kohler, Office of the Atty. Gen., Public Utility Control, New Britain, CT and Philip M. Small, Northeast Utilities Service Co., Hartford, CT, for plaintiff.

Lawrence J. Golden, and Daniel M. Mara, Slater, Sandler & Shulman, P.C., Hartford, CT, for defendants.

### RULING AND ORDER

NEVAS, District Judge.

This is an action for declaratory and injunctive relief brought by the Connecticut Light & Power Company ("CL & P") against Southeastern Connecticut Regional Resources Recovery Authority ("SCRRRA"), Connecticut Regional Resources Authority ("CRRA"), the Department of Public Utility Control ("DPUC"), the Connecticut Public

Utilities Control Authority ("DPUCA"), and several individual members of the DPUCA (collectively referred to as the "defendants"). CL & P seeks a declaratory judgment and a permanent injunction invalidating Conn.Gen. Stat. § 16–243e (the "Municipal Rate Statute" or the "Statute"). Specifically, CL & P seeks to invalidate a provision in the Statute that requires it to purchase electrical power from a municipal resource recovery plant in Preston, Connecticut (the "Preston Facility"), at a purchase price that exceeds the cost that CL & P could produce that electricity itself or purchase it from an alternative private source by a total of $14.8 million over the next twenty years.

The complaint alleges that the Municipal Rate Statute: (1) is preempted by the Public Utility Regulatory Policy Act of 1978, 16 U.S.C. § 824 ("PURPA"), and federal regulations promulgated thereunder by the Federal Energy Regulatory Commission ("FERC"); (2) interferes with interstate commerce in violation of Article I, Section 8 of the United States Constitution; and (3) violates the Takings Clause of the United States Constitution. Currently pending is: (1) CL & P's motion for summary judgment on counts I and III of its complaint, the preemption and takings claims; and (2) defendants motion for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. For the reasons stated below, the court DENIES without prejudice to renewal the pending motions, ORDERS the case REFERRED to FERC for a ruling on the preemption issue, and STAYS all further proceedings in this matter pending a decision by FERC on the preemption issue.

*Background*

A brief review of the history of this dispute is helpful in understanding the procedural context in which the court issues its ruling.

CL & P is a subsidiary of Northeast Utilities, an interstate, public utility holding company, whose members are utility companies located in several New England states. CL & P contends that Northeast Utilities' members share resources and costs pursuant to the Northeast Utilities Generation and Transmission Agreement ("NUG & T"). CL & P, moreover, is a participant in the New England Power Pool ("NEPOOL"), an integrated regional consortium of public utilities that are centrally dispatched throughout the New England area.

In 1983, the Connecticut General Assembly enacted the Municipal Rate Statute. The Statute requires regulated utilities who provide electricity to residents in municipalities, such as CL & P, to purchase electrical power from resource recovery facilities located in those municipalities where the utility's customers reside. The Statute, moreover, requires a covered utility to purchase the electricity from the qualifying resource recovery facility at the retail price that the utility charges its rate payers who reside in the particular municipality.

On October 6, 1987, the DPUC, in its capacity as administrator of the Municipal Rate Statute, ordered CL & P to enter into a twenty-year contract to purchase power at the retail price from the Preston Facility (the "initial decision"). The initial decision required CL & P to purchase power from the Preston Facility at a rate that exceeded the cost that CL & P could have obtained that same amount of power from an alternative source (the "avoided cost rate") by $48.3 million. On November 5, 1987, CL & P appealed the DPUC's initial decision to the Connecticut Superior Court. That appeal raised the federal claims that are now the subject of this litigation, as well as several state law claims. By stipulation, the parties agreed to certify that appeal to the Connecticut Appellate Court. In turn, the Appellate Court "transferred" the appeal to the Connecticut Supreme Court. The Supreme Court issued a ruling, *Connecticut Light & Power Co. v. Department of Public Utility Control*, 210 Conn. 349, 554 A.2d 1089 (1989), finding in favor of CL & P on one of its state law claims and remanding the case back to the DPUC for reconsideration in light of its ruling. The Court, however, chose not to decide any of the federal claims raised by CL & P. In addition, the Court denied CL & P's motion for reconsideration challenging the Court's refusal to decide the federal claims and requesting that the Court correct an allegedly erroneous statement in the ruling.

On December 20, 1989, pursuant to the Connecticut Supreme Court's remand, the DPUC issued a supplementary decision recalculating the rate that CL & P must purchase power from the Preston Facility (the "remand decision"). The recalculated rate required CL & P to purchase electricity from the Preston Facility at a price that is $14.8 million above the avoided cost rate.

Once again, CL & P appealed the remand decision to a Connecticut Superior Court. In addition, CL & P filed this federal action on January 23, 1990. The defendants filed motions to dismiss in both the federal and state court actions. The Connecticut Superior Court denied the defendants' motion to dismiss. While defendants' motion to dismiss the federal action was pending, however, CL & P withdrew its appeal before the Superior Court. Despite the withdrawal of that action, Magistrate Judge Eagan issued a recommended ruling that the federal action be dismissed. After reviewing the Magistrate Judge's ruling, the court declined to adopt the recommended dismissal, denied defendants' motion to dismiss, and reinstated CL & P's action.

Subsequent to the reinstatement, the defendants sought leave to file an interlocutory appeal with the Second Circuit challenging this court's ruling denying their motion to dismiss. The Second Circuit denied defendants motion. The parties proceeded to file dispositive motions on the merits of the federal claims pending in this litigation.

## Discussion

■ Responding to a national energy crisis in 1978, Congress enacted a complex and comprehensive regulatory scheme to encourage the development of alternative energy sources in an effort to reduce the nation's dependence on traditional fossil fuel sources such as energy and gas. *See Federal Energy Regulatory Comm'n v. Mississippi,* 456 U.S. 742, 745–746, 102 S.Ct. 2126, 2130, 72 L.Ed.2d 532 (1982). To foster the development of such alternative sources, Congress believed it necessary to overcome the reluctance within the utility industry to purchase power from such "nontraditional" sources and to remove the financial burdens that federal and state utility regulations imposed on smaller facilities. *Id.* at 750–751, 102 S.Ct. at 2132–33. To that end, Congress enacted PURPA. PURPA directs FERC "to promulgate 'such rules as it determines necessary to encourage cogeneration and small power production,' including rules requiring utilities to offer to sell electricity to, and purchase electricity from, qualifying cogeneration and small power production facilities," at rates not to exceed the purchasing utility's incremental costs. *Id.* at 751, 102 S.Ct. at 2133. It further directs FERC to establish rates for purchases of energy by utilities from the smaller alternative sources within certain, general parameters. *See* 16 U.S.C. § 824a-3(b). Finally, Congress granted FERC the power to exempt small power facilities from federal and state regulation, including the Federal Power Act (FPA), "if the commission determines such exemption is necessary to encourage cogeneration and small power production." 16 U.S.C. § 824a-3(e).

In 1980, FERC promulgated regulations implementing PURPA. FERC established a maximum purchase rate for power from small facilities which capped the rates at the purchasing utility's full avoided costs. *See* 18 C.F.R. § 292.304(a). In the preamble to the agency's regulatory order establishing the regulations governing purchase rates, however, FERC indicated that purchase rates set *above* the avoided cost rate were not inconsistent with its regulations where "the higher rates would be based on State authority to establish such rates, and not on the commission's [FERC's] rules." 45 Fed.Reg. at 12221–22 ("Order No. 69"). The preamble suggested that an exemption from the avoided cost rate maximum was "necessary to encourage cogeneration and small power production" and was consistent with Congress' intent that FERC, "make liberal use of its exemption authority in order to remove the disincentive of utility-type regulation." *See* 45 Fed.Reg. at 12232.

Accordingly, the threshold issue raised by the parties in this litigation is whether the federal regulations limiting purchase rates to the utility's full avoided costs conflicts with and preempts the Connecticut Municipal

Rate Statute's requirement that CL & P purchase power at a rate in excess of its full avoided cost. Although the issue of federal preemption in this area of regulation is not a new one, the law is unsettled and conflicting. *See, e.g., Orange and Rockland Utilities Inc.,* 43 FERC ¶ 61,457 (April 14, 1988) (PURPA and the FPA preempt and prohibit states from imposing rates that exceed the avoided costs rate in future purchases of energy by utility), *decision stayed,* 43 FERC ¶ 61,547 (June 16, 1988), *appeal dismissed sub nom., Occidental Chemical Corp. v. FERC,* 869 F.2d 127 (2d Cir.1989) (appeal not ripe for decision); *Consolidated Edison Co. v. Public Service Comm'n,* 63 N.Y.2d 424, 483 N.Y.S.2d 153, 472 N.E.2d 981 (1984) (PURPA does not preempt state from requiring utilities to purchase energy from alternative energy producers that qualify under both federal and state law at a rate in excess of the avoided cost maximum set by PURPA), *appeal dismissed,* 470 U.S. 1075, 105 S.Ct. 1831, 85 L.Ed.2d 132 (1985) (dismissed for want of federal question); *Kansas City Power & Light Co. v. State Corp. Comm'n,* 234 Kan. 1052, 676 P.2d 764 (1984) (unlawful for state to require utility to purchase electricity above avoided cost rate, the federally regulated rate, without state first obtaining waiver from FERC). In *Consolidated Edison,* Justice White stated in a dissenting opinion:

> There is no reconciling the decisions of these two state courts of last resort [New York and Kansas]. The question over which they are divided, and which, in the posture of this case, falls within our mandatory jurisdiction, is substantial. Moreover, it has arisen in other proceedings ... and should be expected to recur. * * * The effective, orderly, and consistent administration of PURPA requires that the extent of their authority to do so be settled.

*Consolidated Edison,* 470 U.S. at 1077–78, 105 S.Ct. at 1832 (White, J., dissenting). While not novel, the issue before the court in this case is both "open to debate and important." *Id.* at 1078, 105 S.Ct. at 1832.

The debate turns on an interpretation of PURPA's comprehensive and complex scheme. In its simplest terms, CL & P insists that PURPA expressly prohibits a utility from being forced to purchase electricity at "a rate that exceeds the incremental cost to the electric utility of alternative energy." CL & P concludes that the Municipal Rate Statute constitutes an attempt by Connecticut to circumvent the plain language of PURPA, its implementing regulations, Congressional intent, and the federal government's clear command that the maximum purchase cost of electricity cannot exceed avoided cost rate. Conversely, defendants contend that the Municipal Rate Statute is entirely consistent with the federal government's regulation of energy in this area. Relying on the express language of the preamble to FERC's Order No. 69 and the New York Supreme Court's ruling in *Consolidated Edison,* defendants argue that PURPA's regulation of relationships between alternative energy sources and utility companies is limited in nature. They insist that the setting of purchase rates above the avoided cost rate, pursuant to state statute, is consistent with PURPA's objective to foster alternative energy sources and is expressly provided for by FERC.

After oral argument and a careful review of the submissions, the court, *sua sponte,* raised with the parties the appropriateness of referring this matter to FERC, the governing administrative agency, under the doctrine of primary jurisdiction. *See, e.g., GTE Sprint Communications Corp. v. Downey,* 628 F.Supp. 193, 195 (D.Conn.1986); *Macom Products Corp. v. American Tel. & Tel. Co.,* 359 F.Supp. 973, 978 (C.D.Cal.1973). In light of the nature and significance of the issue and the fact that the court and FERC have concurrent jurisdiction over this matter, the court believes that a referral of the preemption question to FERC is prudent.

■ The doctrine of primary jurisdiction has evolved as a flexible device to promote the "proper relationship between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pac. R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956); *see also Downey,* 628 F.Supp. at 195; 5 B. Mezines, J. Stein & J. Gruff, *Administrative Law,*

§ 47.01 to 47.03 at 47–1 to 47–54 (1979 & Supp.1985). This circuit notes that a district court's discretion to invoke this doctrine is guided "by a desire for uniformity of regulation and the need for initial consideration by a body possessing special expertise in the issue presented." *Board of Ed. v. Harris,* 622 F.2d 599, 606 (2d Cir.1979) (citations omitted), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981). When the doctrine is invoked, the court's jurisdiction "is not ousted but merely postponed," *State v. Department of Health, Ed. and Welfare,* 480 F.Supp. 929, 937 (E.D.N.C.1979), and the court will "stay its hand until the agency has applied its expertise to the salient questions." *Engelhardt v. Consolidated Rail Corp.,* 756 F.2d 1368, 1369 (2d Cir.1985). Finally, a controversy involving constitutional or statutory challenges in no way prohibits a court from invoking the doctrine. *See Downey,* 628 F.Supp. at 195 (quoting *City of Peoria v. General Elec. Cablevision Corp.,* 690 F.2d 116, 121 (7th Cir.1982).

Applying these rules, the court concludes that this is indeed a matter "beyond the conventional experience of judges," *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952), that should be referred to FERC for a determination consistent with the agency's regulatory responsibilities. To that end, the parties submitted a stipulation as to the proposed scope and nature of the referral. Accordingly, the following is ordered:

1. CL & P is to file a petition for a declaratory ruling with FERC (the "Petition") within 45 days of the entry of this order, either alone or in conjunction with Northeast Utilities and/or other members of the Northeast Utilities system;

2. The Petition will set forth the following question:

Does federal law preempt the application of § 16–243e of the Connecticut General Statutes to CL & P either in all circumstances or as § 16–243e has been applied in the context of the resources recovery facility of the Southeastern Regional Resources Recovery Authority located in Preston, Connecticut?

3. All further proceedings in this matter are STAYED pending final determination by FERC of the Petition, including any appeals taken from that Petition.

4. CL & P's motion for summary judgment [Filing No. 71] and defendants' motion for judgment on the pleadings [Filing No. 67] are DENIED without prejudice to renewal.

SO ORDERED.