KARYN GIL *v.* COURTHOUSE ONE ET AL.
(15429)

Callahan, C. J., and Berdon, Norcott, Palmer and McDonald, Js.

Argued October 2, 1996—officially released January 14, 1997

*Nancy R. Sussman*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (defendant second injury fund).

*Robert J. Farrell, Jr.*, with whom was *Robert F. Carter*, for the appellee (plaintiff).

*Jason M. Dodge* filed a brief for the Connecticut Business and Industry Association as amicus curiae.

*Michael P. Meotti, Sheila A. Huddleston* and *Nancy J. Valerio* filed a brief for the American Insurance Association as amicus curiae.

*Nathan J. Shafner* and *Amy M. Stone* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

CALLAHAN, C. J. The issue in this appeal from the workers' compensation review board (board) concerns the proper method of calculating the cost-of-living adjustments (COLAs) of the plaintiff, Karyn Gil, whose injury occurred prior to October 1, 1991, and whose workers' compensation benefits extend beyond October 1, 1991, the effective date of Public Acts 1991, No. 91-

339, § 27 (P.A. 91-339), which amended General Statutes § 31-307a (a).[1] The defendant, the second injury fund (fund), appealed to the Appellate Court[2] from a decision of the board, which reversed a finding and award of the workers' compensation commissioner for the sixth district. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the board and remand the case for further proceedings.

The relevant facts are as follows. On December 1, 1983, the plaintiff was exposed to chlorine gas during the course of her employment. As a result, she suffered

[1] The Workers' Compensation Act can be found in chapter 568 of the General Statutes, §§ 31-275 through 31-355a.

General Statutes (Rev. to 1991) § 31-307a (a), as amended by P.A. 91-339, § 27, provides: "Cost-of-living adjustment in compensation rates. (a) The weekly compensation rate of each employee entitled to receive compensation under section 31-307 as a result of an injury sustained on or after October 1, 1969, which totally disables the employee continuously or intermittently for any period extending to the following October first or thereafter, shall be adjusted annually as provided in this subsection as of the following October first, and each subsequent October first, to provide the injured employee with a cost-of-living adjustment in his weekly compensation rate as determined as of the date of the injury under section 31-309. If the maximum weekly compensation rate as determined under the provisions of section 31-309, to be effective as of any October first following the date of the injury, is greater than the maximum weekly compensation rate prevailing as of the date of the injury, the weekly compensation rate which the injured employee was entitled to receive at the date of the injury shall be increased by the percentage of the increase in the maximum weekly compensation rate required by the provisions of section 31-309 from the date of the injury to such October first. The cost-of-living increases provided under this subsection shall be paid by the employer without any order or award from the commissioner. The adjustments shall apply to each payment made in the next succeeding twelve-month period commencing with the October first next succeeding the date of the injury."

Section 31-307a (a) was later amended by Public Acts 1993, No. 93-228, to deny COLAs for injuries resulting in total incapacity that occurred subsequent to the passage of the act.

[2] General Statutes § 31-301b provides: "Any party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court."

permanent injury to her respiratory system. At the time of the accident, the plaintiff earned an average weekly wage of $139.96; her base compensation rate[3] was $93.35. The fund assumed liability for the plaintiff's claim in November, 1986. The plaintiff has received total incapacity benefits from the date of her injury to the present, and in accordance with § 31-307a (a), she has received COLAs that have been added to her base compensation rate each October 1.[4]

In 1991, the legislature enacted P.A. 91-339, § 27, amending § 31-307a (a). Prior to the enactment of P.A. 91-339, § 27, COLAs were calculated annually on October 1 by means of a flat dollar adjustment equal to the flat dollar increase in the maximum compensation rate from year to year.[5] Public Act 91-339, § 27, altered the method by which COLAs were calculated, replacing the flat dollar adjustment method with a percentage adjustment method.[6]

[3] For the purposes of this opinion, "base compensation rate" means the actual cash benefit claimants are entitled to receive on the date of their injury.

[4] General Statutes (Rev. to 1991) § 31-307a, prior to the 1991 amendment, provided in relevant part: "Cost-of-living adjustment in compensation rates. (a) The weekly compensation rate of each employee entitled to receive benefits under section 31-307 as a result of an injury sustained on or after October 1, 1969 . . . shall be adjusted annually as provided herein as of the following October first, and each subsequent October first, to provide such injured employee with a cost-of-living adjustment in his weekly compensation rate as determined as of the date of the injury under section 31-309. If the maximum weekly compensation rate as determined under the provisions of section 31-309, to be effective as of any October first following the date of the injury, is greater than the maximum weekly compensation rate prevailing at the time of injury, the weekly compensation rate which the injured employee was entitled to receive at the time of the injury shall be increased by the *dollar amount* of the increase in the maximum weekly compensation rate required by the provisions of section 31-309 from the date of the injury to such October first. . . ." (Emphasis added.)

[5] The maximum compensation rate is determined according to the provisions in General Statutes § 31-309.

[6] Prior to October 1, 1991, COLAs for total incapacity were determined by calculating the dollar amount of increase in the maximum compensation rate, from the claimant's date of injury to the present, and increasing the

In order to allay confusion caused by the new method of calculating COLAs, the then workers' compensation commission chairman, John Arcudi, on October 30, 1991, promulgated an interpretation of P.A. 91-339, § 27 (Arcudi method). Arcudi interpreted § 27 to mandate percentage adjustments, rather than flat dollar adjustments, for all total disability claimants, including the plaintiff, on and after October 1, 1991. COLAs, under the Arcudi method, were calculated by multiplying the percentage increase each year of the maximum compensation rate by the claimant's current adjusted compensation rate. Consequently, the claimant's new adjusted compensation rate was comprised of that year's COLA added to the previous year's adjusted compensation rate.

Workers' compensation payors followed Arcudi's interpretation until June 5, 1995, when the board issued its decision in *Wolfe* v. *JAB Enterprises, Inc.*, 14 Conn. Workers' Comp. Rev. Op. 127 (1995). In *Wolfe*, the board concluded that "[b]y its plain language, the statute [P.A. 91-339, § 27] increases the base compensation rate at the time of the injury by the percentage of the increase in the maximum compensation rate. The statutory formula does not contemplate an increase based in part on prior COLAs, as those take place [after] the time of the injury. This language is unambiguous, and we do not have discretion to construe it otherwise." Id., 128.

Pursuant to the *Wolfe* decision, COLAs were calculated by determining the percentage increase between the maximum compensation rate at the time of injury and the current maximum compensation rate, multiplying that percentage by a claimant's base compensation rate, and adding that amount to the base

---

claimant's base compensation rate by the same dollar amount. Public Act 91-339, § 27, replaced the flat dollar increase method with a percentage increase method.

compensation rate. The fund altered its method for calculating annual COLAs to comply with the *Wolfe* decision and began implementing the new procedure in December, 1995. Under the *Wolfe* method of calculating COLAs, the plaintiff's biweekly check was reduced from $518.21 to $316.04. The plaintiff challenged the reduction in her benefits and was given a formal hearing before the sixth district commissioner on February 15, 1996. After the hearing, the commissioner rendered a decision ordering the fund to "reinstate the flat dollar amount of cost of living adjustments the claimant is entitled to receive through September 30, 1991 and . . . only apply the formula for calculating adjustments on a percentage increase from October 1, 1991 forward in accordance with the statutory changes made by the enactment of P.A. 91-339."

The fund subsequently petitioned the board for a review of the commissioner's decision. Upon review, the board found that the amendments to § 31-307a (a) in P.A. 91-339, § 27, constituted "a change in the substance of our workers' compensation law and therefore should not be applied retroactively." The board then remanded the matter to the commissioner to enter an order in accordance with its determination that COLAs are to be calculated in accordance with the method of calculation in existence at the time of the injury. That method, in the case of the plaintiff, was the flat dollar COLA in effect prior to the effective date of P.A. 91-339. The fund appealed the board's decision to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The fund urges us to adopt the Arcudi method of calculating COLAs as the proper application of the statute. Alternatively, the fund argues that the court should adopt the position of the board in *Wolfe*. The plaintiff would have us embrace the position taken by the board

in this case and preserve the flat dollar COLA for those persons injured prior to the effective date of P.A. 91-339, applying a percentage formula only to those injured after that date. The Connecticut Business and Industry Association, an amicus curiae in this appeal, argues for a method of calculation that preserves the plaintiff's flat dollar COLAs to 1990, but applies the amended statute's percentage rate to the plaintiff as of October 1, 1991.

This is a case of statutory construction and, as such, "[o]ur analysis of the plaintiff's claims is guided by well established tenets . . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 714–15, 674 A.2d 845 (1996); see *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 120, 676 A.2d 825 (1996); *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d 851 (1996); *State* v. *Spears*, 234 Conn. 78, 86–87, 662 A.2d 80, cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995).

We acknowledge, however, that the Workers' Compensation Act is remedial and must be interpreted liberally to achieve its humanitarian purposes. *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 341, 612 A.2d 1203 (1992); *Dubois* v. *General Dynamics Corp.*, 222 Conn. 62, 67, 607 A.2d 431 (1992); *Hansen* v. *Gordon*, 221 Conn. 29, 32, 602 A.2d 560 (1992); *Ash* v. *New Milford*, 207 Conn. 665, 672, 541 A.2d 1233 (1988). "Because the [Workers' Compensation Act] is a remedial statute, this court should not impose limitations on the benefits

provided for a disabled worker that the statute itself does not clearly specify." *Misenti* v. *International Silver Co.*, 215 Conn. 206, 210, 575 A.2d 690 (1990).

If we were to restrict our view of the question at issue to a literal application of § 27 of P.A. 91-339, the resulting method of calculation of COLAs would be the alternate position espoused by the fund and the method set forth in the board's decision in *Wolfe.* Basically, that method would have the current adjusted compensation rate determined by dividing the current maximum compensation rate by the maximum compensation rate on the date of the plaintiff's injury to find the percentage increase of the maximum compensation rate, and then multiplying that percentage increase by the plaintiff's base compensation rate.[7] The increase over the plaintiff's base compensation rate would be the COLA for the current year. This application of the statute disregards the previous flat dollar COLAs and, as noted above, reduced the plaintiff's biweekly check from $518.21 to $316.04.

In addition to § 27, however, the legislature also enacted P.A. 91-339, § 50, to take effect October 1, 1991, which provides: "Nothing in this act shall be construed to affect any claims for compensation arising from any injury that occurred before October 1, 1991. Nothing in this act shall be construed to reduce the amount of any compensation awarded for any injury that occurred before October 1, 1991." While the first sentence of § 50 concerns claims that were pending at the time the act

---

[7] As an aid to understanding the various methods discussed in this opinion, we will present these methods in the form of a formula:

$$\frac{Max^{current}}{Max^{DOI}} x \; CR^{base} = ACR^{current}, \text{ where}$$

$Max^{current}$ = the current maximum compensation rate,

$Max^{DOI}$ = the maximum compensation rate on the date of injury,

$CR^{base}$ = the claimant's base compensation rate, and

$ACR^{current}$ = the claimant's current adjusted compensation rate.

was passed, the second sentence focuses on compensation and prohibits its reduction for those receiving compensation who were injured before October 1, 1991.[8] The intent of the legislature, as expressed in § 50, calls into question a literal application of § 27 because the legislature clearly did not intend to reduce benefits being received by persons injured prior to October 1, 1991.

Representative Joseph A. Adamo, on the floor of the House of Representatives, expressed the legislature's intent to safeguard the increased compensation received by claimants due to previous COLAs when he summarized P.A. 91-339. He said, in part, "[P.A. 91-339] goes on to repeal a number of sections under the act that are changed by this particular, with . . . most of the act being effective on July 1, 1991, the benefit levels being changed effective October 1, 1991, and it would not—it would be prospective, everyone who [is] on the benefits would be grandfathered under those existing benefits . . . ." 34 H.R. Proc., Pt. 24, 1991 Sess., p. 9039, remarks of Representative Joseph A. Adamo. Although Adamo's comments concerned all of P.A. 91-339, which altered compensation in ways other than the computation of COLAs,[9] his assertions that that act would be applied prospectively and that persons currently receiving benefits would be grandfathered support a reading of the statute that protects COLAs that had been received by claimants prior to October 1, 1991.

---

[8] General Statutes § 31-275 (4), which defines compensation for purposes of the Workers' Compensation Act, provides as follows: " 'Compensation' means benefits or payments mandated by the provisions of this chapter, including, but not limited to, indemnity, medical and surgical aid or hospital and nursing service required under section 31-294d and any type of payment for disability, whether for total or partial disability of a permanent or temporary nature, death benefit, funeral expense, payments made under the provisions of section 31-284b, 31-293a or 31-310, or any adjustment in benefits or payments required by this chapter."

[9] The formula for determining a claimant's base compensation rate under General Statutes § 31-307 (a) was altered by § 26 of P.A. 91-339.

Clearly, the legislature did not enact P.A. 91-339, § 27, with the intent to reduce drastically a claimant's adjusted compensation rate. We therefore conclude that § 50 lends ambiguity to P.A. 91-339, § 27, and that a literal reading of § 27 would result in its improper application. We conclude, rather, that P.A. 91-339 should be applied to preserve the COLA effective October 1, 1990,[10] for claimants who had been receiving COLAs prior to October 1, 1991.

We cannot agree, however, with the plaintiff's contention that she is entitled to have her COLAs determined in the future by the same method of calculation that existed on the date of her injury. In support of her contention, the plaintiff cites the "date of injury" rule and General Statutes §§ 1-1 (u) and 55-3. We summarized the date of injury rule in *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988). There we considered the effect of a 1978 amendment to the Workers' Compensation Act: "By the time Public Acts 1978, No. 78-369, was enacted, we had made clear through earlier decisions our view that new workers' compensation legislation affecting rights and obligations as between the parties, and not specifying otherwise, applied only to those persons who received injuries after the legislation became effective, and not to those injured previously. This date of injury rule was first referred to in 1916, in *Schmidt* v. *O.K. Baking Co.*, 90 Conn. 217, 220–21, 96 A. 963 (1916). In 1921, we stated that '[t]he obligations of the employer to dependents of an employee in case of the death of an injured employee are . . . fixed and determined by the statute in force at the time of injury.' *Quilty* v. *Connecticut Co.*, 96

---

[10] We deliberately choose not to characterize the COLAs as having accrued on a yearly basis because the statute belies that characterization. The statute consistently adds the current COLA to the claimant's base compensation rate, and not the previous year's adjusted compensation rate. General Statutes § 31-307a (a).

Conn. 124, 127, 113 A. 149 (1921)." *Iacomacci* v. *Trumbull*, supra, 222.[11]

The date of injury rule functions as a presumption of legislative intent within the workers' compensation context, similar to the general presumption against retroactive application of a statute. "[W]e consistently have expressed reluctance to construe statutes retroactively where the statutes affect substantial changes in the law, unless the legislative intent clearly and unequivocally appears otherwise." *State* v. *Lizotte*, 200 Conn. 734, 741, 517 A.2d 610 (1986). In *Iacomacci*, we noted the date of injury rule's presumptive status: "[N]ew workers' compensation legislation affecting rights and obligations as between the parties, *and not specifying otherwise*, appl[ies] only to those persons who received injuries after the legislation became effective, and not to those injured previously." (Emphasis added.) *Iacomacci* v. *Trumbull*, supra, 209 Conn. 222. As recently as 1994, we noted that the date of injury rule was a presumption subject to the express intent of the legislature. See *Civardi* v. *Norwich*, 231 Conn. 287, 293 n.8, 649 A.2d 523 (1994).

The legislature is presumed to know of our interpretation of the workers' compensation statutes and to know that it must make its intention clear if it intends to override the date of injury rule. We presume "that the legislature [was] mindful of judicial construction relevant to . . . legislation it enact[ed]." *Murach* v. *Planning & Zoning Commission*, 196 Conn. 192, 200 n.14, 491 A.2d 1058 (1985); *Nationwide Ins. Co.* v. *Gode*, 187 Conn. 386, 395 n.7, 446 A.2d 1059 (1982), overruled in

---

[11] In *Iacomacci* v. *Trumbull*, supra, 209 Conn. 222–23, we cited additional cases in which we applied the date of injury rule. See *Rossi* v. *Thomas F. Jackson Co.*, 120 Conn. 456, 460, 181 A. 539 (1935); *Farmer* v. *Bieber-Goodman Corp.*, 118 Conn. 299, 302–303, 172 A. 95 (1934); *Panico* v. *Sperry Engineering Co.*, 113 Conn. 707, 709, 156 A. 802 (1931); *Preveslin* v. *Derby & Ansonia Developing Co.*, 112 Conn. 129, 142, 151 A. 518 (1930).

part on other grounds, *Covenant Ins. Co.* v. *Coon,* 220 Conn. 30, 36 n.6, 594 A.2d 977 (1991). " 'In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language.' *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 667, 103 A.2d 535 (1954) . . . ." (Citations omitted.) *State* v. *Ellis,* 197 Conn. 436, 459, 497 A.2d 974 (1985).

The legislature, however, has demonstrated its ability to overcome the presumption of the date of injury rule when amending the Workers' Compensation Act. Public Acts 1969, No. 696, § 5, added COLAs to compensation benefits for total incapacity "as a result of an injury sustained prior to October 1, 1969"—before the effective date of the act. Further, Public Acts 1977, No. 77-554, § 1, made the fund responsible for COLAs that were to be added to death benefits "as a result of death arising out of a compensable injury occurring on or before September 30, 1977"—again, before the effective date of the act.

We conclude that it was the intention of the legislature to make P.A. 91-339, § 27, applicable to claimants injured prior to October 1, 1991, when it amended § 31-307a (a) to provide as follows: "The weekly compensation rate of each employee entitled to receive compensation under section 31-307 *as a result of an injury sustained on or after October 1, 1969* . . . shall be adjusted . . . ." (Emphasis added.) The language in the statute is unequivocal, and there is nothing in the legislative history that suggests a different conclusion. Any presumption against having P.A. 91-339, § 27, apply to those injured before 1991 must therefore give way to the expressed intent of the legislature to apply the amended COLA provision to claimants injured before the effective date of the act.

In support of her position, the plaintiff also cites §§ 1-1 (u) and 55-3 and case law concerning judicial

application of substantive and procedural changes in the law. Section 1-1 (u) provides: "The passage or repeal of an act shall not affect any action then pending." We have interpreted § 1-1 (u) as reflecting the general rule concerning the effect of a statute on a pending action. "The situation is not within the provision of [§ 1-1 (u)] of the General Statutes, that '[t]he passage or repeal of an act shall not affect any action then pending,' for this is 'merely declaratory of a rule of construction' and not applicable where a legislative intent to the contrary appears. *Neilson* v. *Perkins*, 86 Conn. 425, 427, 85 Atl. 686 [1913]." *E. M. Loew's Enterprises, Inc.* v. *International Alliance of Theatrical Stage Employees*, 127 Conn. 415, 420, 17 A.2d 525 (1941). Section 1-1 (u) and our interpretation of it is a rule of construction, an aid in construing statutes, and not a rule that preempts the legislature's clearly expressed intent.

Section 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." We have stated that: "The 'obligations' referred to in the statute are those of substantive law. *Nagle* v. *Wood*, 178 Conn. 180, 186, 423 A.2d 875 (1979). Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. *Westport* v. *State*, 204 Conn. 212, 219, 527 A.2d 1177 (1987); *Schieffelin & Co.* v. *Department of Liquor Control*, 194 Conn. 165, 174, 479 A.2d 1191 (1984); *Enfield Federal Savings & Loan Assn.* v. *Bissell*, 184 Conn. 569, 571, 440 A.2d 220 (1981). The legislature only rebuts this presumption when it 'clearly and unequivocally' expresses its intent that the legislation shall apply retrospectively. *State* v. *Lizotte*, [supra, 200 Conn. 741]; *Schieffelin & Co.* v. *Department of Liquor Control*, supra, 174 . . . ." (Citation omitted; internal quotation

marks omitted.) *Darak* v. *Darak*, 210 Conn. 462, 467–68, 556 A.2d 145 (1989); see *Little* v. *Ives*, 158 Conn. 452, 457, 262 A.2d 174 (1969) ("[t]he presumption is that statutes affecting substantive rights are intended to operate prospectively, and to furnish a rule for future cases only, unless they contain language unequivocally and certainly embracing past transactions"). In light of the legislature's clearly expressed intention in P.A. 91-339, § 27, to have it apply to all employees injured "on or after October 1, 1969," we conclude that the legislature intended § 27 to apply to the plaintiff and all those similarly situated.

"We have regularly recognized the right of the legislature retroactively to make legal and regular that which was previously illegal and irregular, provided that vested rights are not unjustly abrogated. *C.S.E.A., Inc.* v. *Connecticut Personnel Policy Board*, 165 Conn. 448, 454–55, 334 A.2d 909 (1973); *Carvette* v. *Marion Power Shovel Co.*, 157 Conn. 92, 95–96, 249 A.2d 58 (1968) . . . ." (Citations omitted.) *Enfield Federal Savings & Loan Assn.* v. *Bissell*, supra, 184 Conn. 572. Our question then becomes whether the legislature, when it enacted Public Acts 1969, No. 696, § 5 (codified at General Statutes § 31-307a),[12] created a vested right in the plaintiff to have her future COLAs calculated by the same method of calculation that existed on the date of her injury. "When the legislature intends to surrender

[12] COLAs were first introduced in Public Acts 1967, No. 842, § 23, which provided in relevant part: "Each employee entitled to receive benefits under section 31-307 as a result of an injury sustained on or after October 1, 1967, shall be increased by that percentage, if any, which equals the percentage of increase in the average wage of employees covered by chapter 567 of the general statutes on that date or as of any subsequent June thirtieth, as determined under the provisions of section 17 of this act over the average wage of employees covered by said chapter 567 in effect at the time of the injury. . . ."

The COLA provision was extensively rewritten in 1969 and was identical to the wording in § 31-307a (a) at the time of the plaintiff's injury.

its power of amendment and revision by creating a contract and thereby binding future legislatures, it must declare that intention in *clear and unambiguous terms.* A relinquishment of this authority should not occur by legislative inadvertence or judicial implication." (Emphasis added.) *Pineman* v. *Oechslin,* 195 Conn. 405, 415, 488 A.2d 803 (1985). We do not believe that, as enacted in 1969, the language in § 31-307a (a)—simply providing that "[t]he weekly compensation rate of each employee . . . shall be adjusted annually as provided herein as of the following October first, and each subsequent October first, to provide such injured employee with a cost-of-living adjustment in his weekly compensation rate"—indicates an intention on the part of the legislature to create a vested, contractual-like right to have one's COLA perpetually calculated as it was calculated on the date of injury.

The plaintiff next contends that Public Acts 1993, No. 93-228, § 21 (P.A. 93-228), which amended General Statutes § 31-309 (a), is relevant to our interpretation of P.A. 91-339, § 27. She claims the following language is pertinent: "[W]eekly compensation received by an injured employee whose injury occurred before July 1, 1993, shall be computed according to the provisions of the law in effect at the time of his injury." Public Acts 1993, No. 93-228, § 21. Because the definition of "compensation" includes "adjustment in benefits,"[13] the plaintiff argues, the legislature clearly intended COLAs to be determined according to the law in effect on the date of injury. In further support of this argument, the plaintiff refers to an opinion letter of the attorney general, which interpreted that portion of P.A. 93-228 that altered the method for determining the maximum compensation rate for the ensuing years.[14] The attorney

---

[13] See footnote 8.

[14] Opinion letter of Richard Blumenthal, attorney general, to Jesse Frankl, chair of the workers' compensation commission, November 2, 1995.

general stated: "COLAs for 1994 and 1995 should be computed in the same manner that COLAs were computed for 1993, i.e., by comparing the maximum compensation rates under § 31-309 using 150% of the average production wage formula (the law in effect for injuries occurring prior to July 1, 1993) and applying whatever *percentage* increase there is to the claimant's weekly compensation rate." (Emphasis added.)

We find neither the plaintiff's argument concerning P.A. 93-228 nor the attorney general's letter compelling. In his letter, the attorney general addressed only the 1993 act and the proper method of computing the maximum compensation rate. Although the maximum compensation rate is used in calculating COLAs, the method of computing the maximum compensation rate is not an issue in this case. The attorney general's opinion letter, therefore, is inapposite.

The plaintiff's interpretation of the language in P.A. 93-228 and her attempt to utilize it to construe P.A. 91-339 is similarly inapposite. Public Act 93-228 addressed only the calculation of the maximum compensation rate and *not* the method of calculation of COLAs. The plaintiff would have us interpret P.A. 93-228, which addresses only one variable in the COLA equation, as evidence of the legislature's position on every variable in the COLA equation and its application date. We do not construe the language of P.A. 93-228 as supporting such a broad interpretation, particularly when we are confronted with unambiguous language in P.A. 91-339, § 27, that clearly and unequivocally makes § 27 applicable to claimants who were injured before its effective date.[15] In sum, we conclude that a perennial application

[15] Additionally, the 1993 legislature did not amend § 31-307a (a) even though Arcudi had interpreted the statute as applying a percentage formula, rather than a flat dollar formula, to claimants injured before October 1, 1991. This lack of legislative action in the face of the commissioner's interpretation further undermines the plaintiff's argument regarding the meaning of the 1993 act.

of the flat dollar COLA for claimants injured before October 1, 1991, the effective date of P.A. 91-339, § 27, is not the appropriate interpretation of § 31-307a (a). Rather, we construe P.A. 91-339, § 27, as mandating percentage-based COLAs commencing October 1, 1991, for all recipients of COLAs.

The proper balance between preserving the "accrued" flat rate adjustments, as we believe we are bound to do by P.A. 91-339, § 50, and fairly construing P.A. 91-339, § 27, can be achieved by employing the following method of calculating COLAs. In order to arrive at the proper percentage of increase, the current maximum compensation rate should be divided by the maximum compensation rate effective on October 1, 1990 (the last maximum compensation rate before P.A. 91-339, § 27, became effective); that figure should be multiplied by the claimant's base compensation rate, i.e., the compensation rate as of the date of injury; the resulting figure should then be added to the claimant's COLA on October 1, 1990[16] (this recognizes and preserves the claimant's accrued COLAs). This sum is the claimant's current adjusted compensation rate.[17] This method preserves the 1990 flat dollar COLA by simply adding it to the claimant's adjusted compensation rate as calculated by the statute.[18] Moreover, it remains true

---

[16] Technically, a claimant's COLA on October 1, 1990, is the difference between the claimant's compensation rate on the date of injury and the claimant's adjusted compensation rate on October 1, 1990. In the language of the industry, this would be the claimant's "accrued" COLAs to October 1, 1990.

[17] $\dfrac{Max^{current}}{Max^{1990}} x \ CR^{base} + COLA^{1990} = ACR^{current}$, where

$Max^{current}$ = the current maximum compensation rate,

$Max^{1990}$ = the maximum compensation rate on October 1, 1990,

$CR^{base}$ = the claimant's base compensation rate,

$COLA^{1990}$ = the claimant's COLA on October 1, 1990, and

$ACR^{current}$ = the claimant's current adjusted compensation rate.

[18] Our calculation determines the percent increase from 1990 to the present date and not from the date of injury. Determining the percent increase from the date of injury in addition to preserving the 1990 COLA would, in essence,

to the statute by increasing the compensation rate that the injured employee was entitled to receive at the date of injury by the percentage of the increase in the maximum compensation rate.[19]

The only arguable alternative to the method set forth in the preceding paragraph for determining COLAs for claimants injured before October 1, 1991, that preserves the 1990 COLA is the Arcudi method, which was followed by the payors and payees for four years.[20] The Arcudi method protected a claimant's "accrued" flat dollar adjustments, but determined the subsequent percentage adjustments by multiplying the maximum compensation rate's percentage increase from the previous year by the adjusted compensation rate of the claimant for the previous year (the previous year's adjusted compensation rate would include "accrued" COLAs to that date).[21] Therefore, unlike the method we adopt, which

---

award two COLAs for each year prior to the amendment of the statute, a flat dollar increase and a percent increase. This certainly was not the legislature's intention when it enacted P.A. 91-339.

[19] Under our method of calculation, the plaintiff's biweekly compensation rate in December, 1995 (the date on which the fund altered the plaintiff's compensation rate from $518.21 to $316.04) would be $495.62. Using the maximum compensation rates for injuries occurring October 1, 1979, through September 30, 1987, as provided by the workers' compensation commissioner, we calculated the plaintiff's December, 1995 rate as follows: where

$Max^{current} = \$584$ (the maximum compensation rate on October 1, 1995),

$Max^{1990} = \$479$,

$CR^{base} = \$93.35$, and

$COLA^{1990} = \$134$ (maximum compensation rate in 1990 [\$479] − maximum compensation rate on date of injury [\$345]);

then $\dfrac{\$584}{\$479} \, x \; \$93.35 + \$134 = \$247.81$ *(weekly)*, $\$495.62$ *(biweekly)*

[20] As noted by the fund, the Arcudi method itself was open to interpretation. Payors used two fundamentally different methods of calculation in an attempt to comply with the Arcudi method.

[21] $\dfrac{Max^{current}}{Max^{previous}} \, x \; ACR^{previous} = ACR^{current}$, where

$Max^{current} =$ the current maximum compensation rate,

$Max^{previous} =$ the maximum compensation rate of the previous year,

$ACR^{previous} =$ the claimant's base compensation rate, and

$ACR^{current} =$ the claimant's current adjusted compensation rate.

references the compensation rate at the time of injury to determine the present year's percentage adjustment, the Arcudi method referenced a claimant's base compensation rate plus all "accrued" COLAs to date to determine the present year's percentage adjustment. In essence, the Arcudi method continually updated the referenced compensation rate by adding to it the yearly dollar adjustments. This method not only protected the flat dollar 1990 COLA, but it also allowed that adjustment and all future percentage adjustments to be figured into subsequent COLAs as part of the referenced compensation rate. The legislature was clear in its intent to preserve a claimant's flat dollar COLA increases to 1990, but there is no support for the proposition that the 1990 flat dollar COLA and future COLAs must or should be used to increase the referenced compensation rate in a determination of the present years' adjustment. Our method of calculation more nearly conforms to the statute because it references the compensation rate at the time of injury; or as the statute provides, "the weekly compensation rate which the injured employee was entitled to receive at the date of the injury . . . ."[22]

---

[22] In its disagreement with our calculation, the dissent relies heavily on (1) the legislature's silence with respect to Arcudi's interpretation when the legislature further amended § 31-307a (a) in 1993 to disallow COLAs for those injured on or after July 1, 1993, and (2) the agency's consistent interpretation of the statute. While we acknowledge these interpretive presumptions, we nonetheless decline to adopt the Arcudi method for two reasons. First, the industry's two interpretations of the Arcudi method; see footnote 20 of this opinion; undermine the presumption that the legislature has concurred with a particular interpretation. Second, there should be no deference to the agency's interpretation because the agency itself has issued inconsistent interpretations (compare the Arcudi method, *Wolfe* v. *JAB Enterprises, Inc.*, supra, 14 Conn. Workers' Comp. Rev. Op. 127, and *Gil* v. *Courthouse One*, Compensation Review Board, Case No. 3278 CRB-6-96-3 [May 1, 1996]); *Glastonbury Education Assn.* v. *Freedom of Information Commission*, 35 Conn. App. 111, 117, 643 A.2d 1320 (1994), aff'd, 234 Conn. 704, 663 A.2d 349 (1995); and the question of law before us in this case has not previously been subject to judicial scrutiny. *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 679, 628 A.2d 957 (1993) ("when

We conclude, therefore, that COLAs for claimants injured prior to October 1, 1991, should be calculated according to the following formula: the percentage of increase of the maximum compensation rate is to be obtained by dividing the current maximum compensation rate by the maximum compensation rate effective on October 1, 1990; that figure should then be multiplied by the claimant's base compensation rate and then added to the claimant's COLA as of October 1, 1990.

The plaintiff's COLAs should be adjusted from the date of reduction in December, 1995, to the present in accordance with the method set out in the preceding paragraph.

The judgment of the board is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion NORCOTT, PALMER and MCDONALD, Js., concurred.

BERDON, J., concurring in part and dissenting in part. Contrary to our clearly defined law, the court today adopts an interpretation of the Workers' Compensation Act (act) pertaining to the method of calculating cost-of-living adjustments (COLAs) urged upon us only by the Connecticut Business and Industry Association (CBIA) and the American Insurance Association (AIA), two of the parties filing amicus curiae briefs.[1] That

a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference"); see *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 210 Conn. 349, 357, 554 A.2d 1089 (1989). The confusion concerning the proper application of P.A. 31-339, § 27, undercuts any reliance on the presumptions cited by the dissent, particularly in light of the clear and unambiguous language in P.A. 91-339, § 27, that provides: "*[T]he weekly compensation rate which the injured employee was entitled to receive at the date of the injury* shall be increased by the percentage of the increase in the maximum weekly compensation rate . . . ." (Emphasis added.)

[1] The Connecticut Trial Lawyers Association was also granted permission to appear as amicus curiae and filed a brief.

method of calculating COLAs for persons injured prior to October 1, 1991, will result in totally disabled workers, dependent surviving spouses, and minor children of workers killed in the course of their employment, receiving less in weekly compensation benefits. Indeed, the decision of the majority today means that from October 1, 1991, many of those beneficiaries received amounts in excess of that to which they were entitled and they conceivably could be required to repay those amounts. The second injury fund of the state of Connecticut (fund), which is obligated to make these payments to the plaintiff, Karyn Gil, does not, *before this court*, take the position adopted by the majority. Instead, the fund argues, in the first instance, for an interpretation that is more moderate, leaving the plaintiff and other beneficiaries entitled to COLAs prior to October 1, 1991, in the same position that they were in before the state unilaterally decided to reduce their awards.[2]

We are required in this appeal to answer the following: (1) whether the provisions of § 27 of No. 91-339 of the 1991 Public Acts (P.A. 91-339), which amended General Statutes (Rev. to 1991) § 31-307a (a), applies retroactively for COLA compensation involving injuries that occurred prior to October 1, 1991; and (2) if so, the method of calculating those COLAs.

I will briefly restate the undisputed facts in this case. The plaintiff, while in the employ of the defendant Courthouse One in 1983, was exposed to chlorine gas. As a result of this exposure, she suffered a permanent physical impairment to her respiratory system and has been totally disabled since February, 1984. On November 5, 1986, the fund assumed liability for the plaintiff's injuries.

The plaintiff was initially found to be entitled to weekly basic compensation benefits of $93.35 per week

---

[2] See footnote 8.

(base rate). The base rate was thereafter increased on October 1 of each subsequent year as a result of the COLAs she received pursuant to § 31-307a (a). The method of calculating the COLAs under § 31-307a (a) prior to October 1, 1991, was the flat grant accrual method—the annual COLA was based upon the difference between the maximum compensation in effect at the time of the adjustment and the maximum in the preceding October 1. The compensation was therefore the base rate plus the sum of each annual COLA (flat grant method). In this case, under the flat grant method, the plaintiff would receive as of October 1, 1995, her base rate of $93.35 plus the sum of the annual COLAs in the amount of $239,[3] totaling $332.35.

The legislature adopted P.A. 91-339, thereby amending § 31-307a (a) by substituting a percentage adjustment for the flat grant. Public Act 91-339, § 27, provides in relevant part: "If the maximum weekly compensation rate as determined under the provisions of section 31-309 . . . to be effective as of any October first following the date of the injury, is greater than the maximum weekly compensation rate prevailing as of the date of the injury, the weekly compensation rate which the injured employee was entitled to receive at the date of the injury shall be increased by the percentage of the increase in the maximum weekly compensation rate required by the provisions of section 31-309 . . . from the date of the injury to such October first. . . ."

On October 30, 1991, commissioner John A. Arcudi, the former chairperson of the workers' compensation commission (commission), administratively issued a clarifying memorandum concerning P.A. 91-339 (Arcudi memorandum). Implicitly recognizing the "date of

---

[3] The annual increases in maximum compensation were: 1984 — $36; 1985 — $16; 1986 — $11; 1987 — $21; 1988 — $18; 1989 — $15; 1990 — $17; 1991 — $12; 1992 — $22; 1993 — $16; 1994 — $38; and 1995 — $17, totaling $239.

injury rule" with respect to compensation—which will be discussed later in this opinion[4]—he viewed COLAs as an "adjustment," rather than "compensation." Arcudi concluded that P.A. 91-339 applied to injuries prior to October 1, 1991, reasoning that "[i]n interpreting the law over the years, 'compensation rate' has come to mean the worker's base rate computed at the time of injury.[5] The cost-of-living increase has been called an 'adjustment.' Therefore, when section 27 changes the computation of the 'adjustment' to a percentage increase rather than a dollar amount and has no saving clause as does [P.A. 91-339] section 29 when it refers to the compensation rate, the legislative intent is to have all cost-of-living adjustments computed after October 1, 1991 to be done on a percentage basis."

The Arcudi memorandum, interpreting P.A. 91-339, § 27, also determined that the COLAs should be calculated for persons injured prior to 1991 in the following manner. The base rate plus the accumulated COLAs as of September 30, 1991, is multiplied by the percentage increase from September 30, 1991, to the year in question; this COLA is then added to the base rate plus the accumulated COLAs as of September 30, 1991, in order to determine the compensation rate for the year (Arcudi method). Applying the Arcudi method, as the fund did until 1995, would result in the plaintiff receiving, as of October 1, 1995, the base rate of $93.35 and accumulated COLAs as of September 30, 1991, of $134, plus a percentage increase of 21.9 percent in the amount of $49.79, totaling $277.14. All payors, including the fund with respect to the plaintiff, followed the Arcudi method, with a slight variation, which amounted to an insignifi-

---

[4] See footnote 11.

[5] Arcudi, however, did not take into account Public Acts 1991, No. 91-32, § 1, adopted earlier in the legislative session, which amended General Statutes (Rev. to 1991) § 31-275, and defined "compensation" under the act to include "any adjustment in benefits or payments required by this" act. See General Statutes § 31-275 (4); see also footnote 9.

cant difference,[6] for calculating COLAs for persons injured prior to October 1, 1991, until 1995.

On June 5, 1995, in *Wolfe* v. *JAB Enterprises, Inc.*, 14 Conn. Workers' Comp. Rev. Op. 127 (1995), an opinion authored by Jesse M. Frankl, the chairperson of the commission, the workers' compensation review board (review board) held that P.A. 91-339, § 27, required that the calculations be made as follows: the base rate multiplied by the percentage of increase between the maximum rate on the date of injury and the date of adjustment (*Wolfe* method). Id., 129–30. The fund, applying the *Wolfe* method, recalculated the plaintiff's compensation as of October 1, 1995, which would result in the plaintiff receiving 169 percent of her base rate of $93.35, totaling $157.76. The plaintiff, contesting the redetermination of her weekly compensation, brought the matter before the commission for New Britain. The New Britain commission rejected *Wolfe* and ordered that the plaintiff's weekly compensation benefits be calculated under the Arcudi method.

The fund appealed from the New Britain commission's order to the review board. After the appeal was taken, on February 9, 1996, Frankl administratively issued a memorandum, essentially reversing his position in *Wolfe*, which provided that for all persons injured prior to October 1, 1991, their COLAs should be calculated in accordance with the Arcudi method. On May 1, 1996, the review board[7] concluded that the provisions of P.A. 91-339, § 27, were not retroactive and ordered

[6] In subsequent years, some payors calculated COLAs by taking the claimant's ongoing rate as of the then current September 30, and then adding the percentage change in the maximum rate from the previous October 1 to the current October 1. This variation, as the fund points out, resulted in a minimal difference in compensation.

[7] The composition of the review board did not include Frankl, but consisted of commissioners Amado J. Vargas, Michael S. Miles and Robin L. Wilson.

that the plaintiff's compensation be recalculated based upon the flat grant method, thereby substantially increasing the weekly amount that would be allowed under *Wolfe* or the Arcudi method. Subsequently, the fund brought this appeal.[8]

On appeal, the CBIA and AIA argue, and the majority agrees, that the COLAs for any given year should be calculated based upon the base rate, multiplied by the percentage increase in the maximum rate between 1991 and the year in question; that COLA is then added to the base rate plus the COLAs as of September 30, 1991, in order to determine the compensation rate for the year (CBIA/AIA method). Applying the CBIA/AIA method would result in the plaintiff receiving as of October 1, 1995, the base rate of $93.35 and the accumulated COLAs as of September 30, 1991, of $134, plus a percentage increase of 21.9 percent of the base rate of $93.35 in the amount of $20.44, totaling $247.79.

In sum, the amounts the plaintiff would receive as of October 1, 1995, under each method are as follows:

| *Wolfe* method | $157.76 |
| CBIA/AIA method | $247.79 |
| Arcudi method | $277.14 |
| Flat grant method | $332.35 |

I

Although I agree with the majority that the provisions for calculating COLAs pursuant to P.A. 91-339, § 27, are

---

[8] Although the fund, represented by the attorney general, unilaterally reduced the plaintiff's compensation in accordance with the *Wolfe* method and appealed to the review board from the commissioner's order to recalculate the compensation in accordance with the Arcudi method, the fund has reversed its position 180 degrees before this court. The fund now argues that the Arcudi method correctly implements P.A. 91-339, § 27. Indeed, the attorney general in his brief states that the Arcudi method "appropriately follows the Compensation Commission's long-standing interpretation of § 31-307a, and results in the greatest fairness to the maximum number of claimants."

retroactive, in my view, it is not as easy a call as the majority opinion would make it appear. Indeed, if we were writing on a clean slate and applied the plain language of P.A. 91-339,[9] which was confirmed by the legislative debates,[10] the "date of injury rule,"[11] our gen-

[9] "In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. . . . [W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Citations omitted; internal quotation marks omitted.) *Dos Santos* v. *F. D. Rich Construction Co.*, 233 Conn. 14, 20, 658 A.2d 83 (1995).

Section 50 of P.A. 91-339 clearly stated: "*Nothing in this act shall be construed to affect any claims for compensation arising from any injury that occurred before October 1, 1991.* Nothing in this act shall be construed to reduce the amount of any compensation awarded for any injury that occurred before October 1, 1991." (Emphasis added.) Earlier in that session, the legislature defined compensation to include payments under the act and "any adjustment in benefits or payments required by this" act. Public Acts 1991, No. 91-32, § 1; see General Statutes § 31-275 (4). Nevertheless, I recognize that it is arguable that some of this language can be construed as ambiguous, in that P.A. 91-339, § 50, could be read to refer to the accumulated COLAs as of September 30, 1991.

[10] "When the language of a statute is unclear, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve." *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 341, 612 A.2d 1203 (1992). The legislative debates with respect to P.A. 91-339 confirm that the legislature intended that the changes in compensation not be retroactive. See 34 H.R. Proc., Pt. 24, 1991 Sess., p. 9039, remarks of Representative Joseph Adamo ("[the amendments] would be prospective, everyone who [is] on the existing benefits would be grandfathered under those existing benefits").

[11] This court has held that "new workers' compensation legislation affecting rights and obligations as between the parties, and not specifying otherwise, applie[s] only to those persons who received injuries after the legislation became effective, and not to those injured previously. This date of injury rule was first referred to in 1916, in *Schmidt* v. *O.K. Baking Co.*, 90 Conn. 217, 220–21, 96 A. 963 (1916). In 1921, we stated that [t]he obligations of the employer to dependents of an employee in case of the death of an injured employee are . . . fixed and determined by the statute in force *at the time of injury.* . . . *Quilty* v. *Connecticut Co.*, 96 Conn. 124, 127, 113 A. 149 (1921).

"In the fifty-seven years that followed we continued to use the date of injury rule in determining the rights and obligations as between the parties

eral rules of statutory construction,[12] and our long-
standing rule liberally construing workers' compensa-

following revisions to the Workers' Compensation Act. See *Rossi* v. *Jackson
Co.*, 120 Conn. 456, 460, 181 A. 539 (1935); *Farmer* v. *Bieber-Goodman
Corporation*, 118 Conn. 299, 301, 172 A. 95 (1934); *Panico* v. *Sperry Engi-
neering Co.*, 113 Conn. 707, 709, 156 A. 802 (1931); *Preveslin* v. *Derby &
Ansonia Developing Co.*, 112 Conn. 129, 142, 151 A. 518 (1930). As recently
as 1975, we acknowledged the continued existence of the rule although
finding it inapplicable to changes in the appellate procedures which we
concluded did not affect rights and obligations as between the parties. See
*Chieppo* v. *Robert E. McMichael, Inc.*, 169 Conn. 646, 649–50, 363 A.2d 1085
(1975)." (Emphasis in original; internal quotation marks omitted.) *Iacomacci*
v. *Trumbull*, 209 Conn. 219, 222–23, 550 A.2d 640 (1988).

Indeed, the date of injury rule was codified in Public Acts 1993, No. 93-
228, § 21, when the legislature amended § 31-309 (a) as follows: "[W]eekly
compensation received by an injured employee whose injury occurred before
July 1, 1993, shall be computed according to the provisions of the law in
effect at the time of the injury."

[12] The majority acknowledges that General Statutes § 55-3, as it must,
provides: "No provision of the general statutes, not previously contained in
the statutes of the state, which imposes any new obligation on any person
or corporation, shall be construed to have a retrospective effect." The legisla-
ture can rebut this presumption that statutory changes affecting substantive
rights are prospective only if the legislature clearly and unequivocally
expresses an intent that the changes are retrospective. *State* v. *Lizotte*, 200
Conn. 734, 740–41, 517 A.2d 610 (1986). The majority, however, stands § 55-
3 on its head by concluding that P.A. 91-339, § 27, expressly provides for
retroactive application because it applies to all employees injured "on or
after October 1, 1969." That ignores the fact that the date of October 1,
1969, was in the original statute as the starting date for granting COLAs and
only appears in P.A. 91-339, § 27, because the statute is duplicated in the
amended form by indicating additions in capital letters and deletions in
brackets. See *State* v. *Kozlowski*, 199 Conn. 667, 675, 509 A.2d 20 (1986)
("The legislature characteristically casts acts which alter language within
existing statutory subsections in the form of repeal and substitution, reserv-
ing the label of amendment for acts which add entirely new subsections.
This format complies with the requirements of [General Statutes] § 2-18 that
an act altering a statutory subsection set out that subsection in its entirety,
with changes clearly marked.").

Public Act 91-339, § 27, provides: "Subsection (a) of section 31-307a of
the general statutes, as amended by section 24 of public act 91-32, is repealed
and the following is substituted in lieu thereof:

"(a) The weekly compensation rate of each employee entitled to receive
compensation under section 31-307 as amended by section 23 of [this act]
PUBLIC ACT 91-32 AND SECTION 26 OF THIS ACT, as a result of an injury
sustained on or after October 1, 1969, which totally disables the employee
continuously or intermittently for any period extending to the following

tion laws,[13] I would be compelled to conclude that the review board was correct in holding that P.A. 91-339, § 27, has no retroactive application and those who were injured prior to October 1, 1991, are entitled to COLAs based upon the flat grant method.

I reach the same result as to retroactivity that the majority does, but I do so only because of the Arcudi

October first or thereafter, shall be adjusted annually as provided in this subsection as of the following October first, and each subsequent October first, to provide the injured employee with a cost-of-living adjustment in his weekly compensation rate as determined as of the date of the injury under section 31-309, AS AMENDED BY SECTION 29 OF THIS ACT. If the maximum weekly compensation rate as determined under the provisions of section 31-309, AS AMENDED BY SECTION 29 OF THIS ACT, to be effective as of any October first following the date of the injury, is greater than the maximum weekly compensation rate prevailing as of the date of the injury, the weekly compensation rate which the injured employee was entitled to receive at the date of the injury shall be increased by the [dollar amount] PERCENTAGE of the increase in the maximum weekly compensation rate required by the provisions of section 31-309, AS AMENDED BY SECTION 29 OF THIS ACT, from the date of the injury to such October first. The cost-of-living increases provided under this subsection shall be paid by the employer without any order or award from the commissioner. The adjustments shall apply to each payment made in the next succeeding twelve-month period commencing with the October first next succeeding the date of the injury."

It is simply wrong to conclude that, because the starting date for COLAs was in the statute when it was originally enacted, the legislature intended the amendment to apply to injuries that occurred back to October 1, 1969. This "reasoning" would then lead to the conclusion that the legislature intended all COLAs, dating back to October 1, 1969, to be calculated on a percentage basis. This result, however, is what the legislature specifically disavowed in enacting P.A. 91-339, § 50. Furthermore, General Statutes § 1-1 (u) provides: "The passage or repeal of an act shall not affect any action then pending."

[13] "[W]e are mindful of the principles underlying Connecticut practice in workmen's compensation cases: that the legislation is remedial in nature . . . and that it should be broadly construed to accomplish its humanitarian purpose." (Citation omitted; internal quotation marks omitted.) *Dubois* v. *General Dynamics Corp.*, 222 Conn. 62, 67, 607 A.2d 431 (1992). "Because the Workers' Compensation Act is a remedial statute, this court should not impose limitations on the benefits provided for a disabled worker that the statute itself does not clearly specify." *Misenti* v. *International Silver Co.*, 215 Conn. 206, 210, 575 A.2d 690 (1990).

memorandum. Arcudi, as the then chairperson of the commission, interpreted P.A. 91-339, § 27, as applying retroactively to those who were injured prior to October 1, 1991. "[T]he interpretation of a statute by an agency created to administer that statute is traditionally accorded great deference." *E.I.S., Inc.* v. *Board of Registration for Professional & Land Surveyors*, 200 Conn. 145, 148, 509 A.2d 1056 (1986); see *Crochiere* v. *Board of Education*, 227 Conn. 333, 354, 630 A.2d 1027 (1993). "It is a familiar rule of statutory and constitutional construction that such usage, while not absolutely binding upon the courts, is entitled to great weight. *Water Commissioners* v. *Curtis*, 87 Conn. 506, 511, 89 Atl. 189 [1913] . . . . Where the law has contemporaneously been put into operation, and in doing so a construction has necessarily been put upon it, this construction, especially if followed for some considerable period, is entitled to great respect, as being very probably a true expression of the legislative purpose, and is not lightly to be overruled, although it is not conclusive. 2 Cooley, Taxation (4th Ed.) pp. 1111, 1112, § 502." (Citations omitted; internal quotation marks omitted.) *Savings Bank of Rockville* v. *Wilcox*, 117 Conn. 188, 194–95, 167 A. 709 (1933). In this case, it is particularly appropriate to give deference to Arcudi's interpretation that P.A. 91-339, § 27, has retroactive application for those injured before October 1, 1991, because during the four year period that P.A. 91-339, § 27, was applied, the commission, payors and beneficiaries did not challenge that determination. Id., 195.

Further, the legislature revisited COLAs on two separate occasions before the date of the review board decision in this case, and took no action to reverse the retroactive interpretation that the Arcudi memorandum placed on P.A. 91-339, § 27. In 1992, the legislature amended the COLA provisions of General Statutes § 31-306 (a) (2) in order to substitute the percentage method

for the flat grant method, which was similarly adopted in P.A. 91-339, § 27, for compensation to dependents of deceased workers. See Public Acts 1992, No. 92-31, § 4. Subsequently, in 1993, the legislature revisited COLAs and eliminated them for injuries sustained on or after July 1, 1993. See Public Acts 1993, No. 93-228, § 15.

We have stated that there "is the inference of legislative concurrence with the agency's interpretation to be drawn from legislative silence concerning that interpretation, especially where the legislature makes unrelated amendments in the same statute." *Connecticut Light & Power Co.* v. *Public Utilities Control Authority,* 176 Conn. 191, 198, 405 A.2d 638 (1978). Indeed, it is clear from its action that the legislature was greatly concerned about the status of workers' compensation and the escalating costs on business and industry during the intervening period. Because the Arcudi memorandum "affects so many of the state's citizens, and because of the interest evidenced by the . . . General Assembly . . . we may not assume that the members of the General Assembly . . . were unaware of, or ignored" the Arcudi method. Id., 199.

"We, therefore, construe the legislative silence as legislative concurrence in that interpretation. That legislative concurrence is 'presumptive evidence' of the correctness of the administrative interpretation. 2A Sutherland, [Statutory Construction (4th Ed. Sands 1973) § 49.10], pp. 261–62. This 'presumptive evidence' of correctness we add to the persuasive effect normally given to an administrative interpretation. Coupled, these two considerations outweigh any arguments that might be advanced for a contrary interpretation." *Connecticut Light & Power Co.* v. *Public Utilities Control Authority,* supra, 176 Conn. 199. Here, where the legislature twice revisited § 31-307a (a) and failed to take any action to reverse Arcudi's interpretation, the legislature is presumed to have acquiesced in its retroactive

application. Accordingly, on the basis of the above reasoning, I concur with the majority that P.A. 91-339, § 27, has retroactive application to those injured before October 1, 1991.

## II

The same rules of statutory construction used to arrive at the conclusion that P.A. 91-339, § 27, applies retroactively to persons who were injured prior to October 1, 1991, must be applied to determine the legislative intent with respect to the method to be used in order to calculate COLAs for those beneficiaries. The legislative silence with respect to the Arcudi method, which creates presumptive evidence of its correctness, coupled with the four years of consistent administrative interpretation, leads me to the inescapable conclusion that the legislature intended that COLAs be calculated for those beneficiaries in accordance with the Arcudi method. *Connecticut Light & Power Co.* v. *Public Utilities Control Authority,* supra, 176 Conn. 199.

The majority rejects the Arcudi method, however, because (1) there was a slight variation in calculating the COLAs under this method, and (2) the review board had issued an inconsistent interpretation. First, the fund itself, which advocates for the Arcudi method in this appeal, points out that the two interpretations in calculating the Arcudi method resulted in an insignificant variation in the amount of benefits. See footnote 6. Furthermore, it can be presumed that the legislature concurred in the Arcudi method, despite this interpretational variation, because the two times that the legislature revisited COLAs, first in 1992 and then in 1993, it neglected to tinker with the Arcudi method.

Second, subject to this insignificant variation, the industry calculated COLAs from October 1, 1991, to the date of the decision in this case in accordance with the Arcudi method. It is correct, as the majority points out,

that on June 5, 1995, the review board decided *Wolfe*, changing the COLA calculation. That decision, however, was short-lived. Frankl, the author of *Wolfe*, issued a memorandum dated February 9, 1996, to all commissioners and payors that COLAs calculated prior to October 1, 1991, were to be based on the Arcudi method. Therefore, the majority's reliance on the aberrant *Wolfe* decision cannot be justified to overcome four years of adherence to the Arcudi method.

Furthermore, in adopting the method of calculation urged upon us only by the CBIA and the AIA, the majority fails to acknowledge our long-standing rule that the act should be liberally interpreted. "[W]e are mindful of the principles underlying Connecticut practice in workmen's compensation cases: that the legislation is remedial in nature . . . and that it should be broadly construed to accomplish its humanitarian purpose." (Citation omitted; internal quotation marks omitted.) *Dubois* v. *General Dynamics Corp.*, 222 Conn. 62, 67, 607 A.2d 431 (1992). "Because the [act] is a remedial statute, this court should not impose limitations on the benefits provided for a disabled worker that the statute itself does not clearly specify." *Misenti* v. *International Silver Co.*, 215 Conn. 206, 210, 575 A.2d 690 (1990).

In my view, there is no basis for the CBIA/AIA method of calculating the COLAs for those who were injured before October 1, 1991, thus the calculation that would provide the plaintiff with weekly compensation of $247.79 should be rejected. Rather, the plaintiff's COLAs should be calculated based on the Arcudi method, a method followed by all payors for a period of over four years, which would provide weekly compensation to the plaintiff in the amount of $277.14.

Accordingly, I concur that P.A. 91-339, § 27, applies retroactively to those who were injured prior to October 1, 1991, but disagree as to the method of calculating the COLAs for those beneficiaries.